## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TYRELL D. SINGLETON,

     *Plaintiff*,

     v.

DISTRICT OF COLUMBIA, *et al.*,

     *Defendants*.

Case No. 1:21-cv-01914-RJL

## DEFENDANTS' MOTION TO DISMISS OR IN THE
## ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendants the District of Columbia (the District), Peter Newsham, Brian O'Shea, and

Adam Sotelo move under Fed. R. Civ. P. 12(b)(5) and 12(b)(6) to dismiss Plaintiff Tyrell D.

Singleton's Complaint.  In the alternative, the Defendants move under Fed. R. Civ. P. 56(c) for

summary judgment.

In support of this Motion, Defendants submit (1) a Statement of Material Facts about

which There is No Genuine Issue, (2) a Memorandum of Points and Authorities, and (3) a

proposed order.

Date:    November 8, 2021

Respectfully submitted

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Stephanie E. Litos*
STEPHANIE E. LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Philip A. Medley*
PHILIP A. MEDLEY [1010307]
MATTHEW TROUT [1030119]
Assistant Attorneys General
400 6th Street, N.W.
Washington, D.C. 20001
(202) 724-6626 / (202) 724-5695 (office)
(202) 664-4791 (cell)
(202) 741-5920 / (202) 724-6590 (fax)
philip.medley@dc.gov /
matthew.trout1@dc.gov

*Counsel for Defendants District of Columbia,
Peter Newsham, Brian O'Shea, and Adam
Sotelo*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TYRELL D. SINGLETON,

*Plaintiff*,

v.                                                    Case No. 1:21-cv-01914-RJL

DISTRICT OF COLUMBIA, *et al.*,

*Defendants*.

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Under Fed. R. Civ. P. 56(c) and LCvR 7(h)(1), Defendants the District of Columbia (the

District), Peter Newsham, Brian O'Shea, and Adam Sotelo submit the following statement of

material facts as to which there is no genuine issue.

1.      On the evening of May 31, 2020 at approximately 11:15 p.m., officers of the

Metropolitan Police Department (MPD)—including Defendants O'Shea and Sotelo—responded

to a radio bulletin about active looting taking place at the Walgreens at 801 7th Street N.W.  Ex.

1, Gerstein Affidavit.

2.      Their encounter—and subsequent arrest of Plaintiff—was captured by the body-

worn camera (BWC) of Defendant O'Shea.  Ex. 2, O'Shea BWC Footage.

3.      The incident depicted in the BWC footage occurred as follows:

        a.      Defendant O'Shea exits his MPD vehicle near the intersection of H and
        7th Streets N.W.  *Id.* at 0:01-0:05.

        b.      Defendant O'Shea and other officers approach the Walgreens.  *Id.* at 0:43-
        0:55.  There is no sign that chemical irritants have been deployed in the vicinity.
        *Id.*

c.      As the officers approach the Walgreens, Defendant O'Shea states, "They're inside," and "There's one in there—right there, right there, right there!" *Id.* at 0:56-1:00.

d.      Defendant O'Shea states, "Watch—coming out the door, coming out the door!" as he enters the Walgreens through a broken window. *Id.* at 1:05-1:10. Broken glass is strewn about on the sidewalk and inside the Walgreens. *Id.*

e.      Someone inside the Walgreens can be heard yelling "Let's go!" repeatedly. *Id.* at 1:17-1:19.

f.      Plaintiff suddenly emerges from behind an aisle and runs past Defendant O'Shea. *Id.* at 1:20-1:21.

g.      Screenshots of Defendant O'Shea's BWC footage show that Plaintiff was wearing a t-shirt, shorts, gloves, and a blue bandana covering his nose and mouth, and that he was carrying a garbage bag containing items—one of which, based on its silhouette, appears to be a bottle of wine:





Ex. 3, Screenshots of O'Shea BWC Footage.

h.      Plaintiff then slides legs-first through glass shards towards one of the broken windows.  Ex. 2, O'Shea BWC Footage at 1:22-1:23.

i.      In pursuit, Defendant O'Shea yells "Get him, get him, get him!" *Id.* at 1:23-1:24.

j.      After going through the broken window, Plaintiff immediately encounters officers on the sidewalk, and a struggle ensues.  Plaintiff repeatedly screams "No!", "They got me!", and "I'm sorry!" while the officers direct him to stop resisting and to back down.  *Id.* at 1:25-1:36.

k.      Defendant O'Shea yells "Incoming! Incoming!"  *Id.* at 1:37-1:39.

l.      Plaintiff screams "Get my phone!" and pulls away from the officers to grab his phone, which is lying on the sidewalk in broken glass.  *Id.* at 1:38-1:44.

m.      The officers continue to try to detain Plaintiff as he continues to resist and scream "They got me!"  *Id.* at 1:45-2:25.  The officers are finally able to secure Plaintiff in handcuffs as loud bangs can be heard in the background.  *Id.* at 2:25.

n.      For Plaintiff's safety and their own safety, the officers pull Plaintiff over to an area near some MPD motorcycles.  *See* Ex. 1, Gerstein Affidavit (noting that the officers were being pelted with foreign objects as they tried to detain Plaintiff); *and see* Ex. 2, O'Shea BWC Footage at 2:25-3:00.

o.      Plaintiff says, "Ok, I'll get up," but the officers order him to stay down. Ex. 2, O'Shea BWC Footage at 2:56-3:00.

p.      An officer again directs Plaintiff to stay down, and Plaintiff says "Ok." *Id.* at 3:13-3:14.

q.      Officer O'Shea radios for a transport and states, "He's probably going to have to go to the hospital."  Plaintiff responds, "No I'm not!" *Id.* at 3:18-3:26.

r.      Plaintiff starts to get up, and the officers again order him to stay down. *Id.* at 3:33-3:36.

s.      Plaintiff again starts to get up but the officers put him back down on the ground and order him to stay down. *Id.* at 3:37-3:41.

t.      An officer asks Plaintiff if he wants to sit up, and Plaintiff responds that he does. The officers then take him over to the curb. *Id.* at 4:16-4:25.

u.      Plaintiff asks the officers "Yo, I'm going to jail? For how long?" *Id.* at 4:55-5:00.

v.      Defendant O'Shea uncuffs Plaintiff's hands and re-cuffs them behind his back. *Id.* at 5:12-6:05.

w.      Defendant O'Shea brings Plaintiff to another officer for transport. *Id.* at 6:06-end.

4.      Plaintiff was arrested and charged with assault on a police officer, second degree burglary, resisting arrest, and felony violation of the Riot Act.  Ex. 4, Arrest Report.

5.      Plaintiff was prosecuted for second degree burglary and assault on a police officer.  Ex. 5, Dkt. from *United States v. Tyrell D. Singleton*, Case No. 2020 CF2 005094 ("Criminal Matter").  On February 9, 2021, the United States filed a Notice of *Nolle Prosequi*, and the Court dismissed the Criminal Matter.  *Id.*

6.      Plaintiff provided his notice to the District of potential claims for unliquidated damages—purportedly in compliance with D.C. Code § 12-309—on January 25, 2021.  Ex. 6, Notice dated Jan. 25, 2021.

Date:    November 8, 2021                    Respectfully submitted

                                            KARL A. RACINE
                                            Attorney General for the District of Columbia

                                            CHAD COPELAND
                                            Deputy Attorney General
                                            Civil Litigation Division

                                            */s/ Stephanie E. Litos*
                                            STEPHANIE E. LITOS [483164]
                                            Assistant Deputy Attorney General
                                            Civil Litigation Division

                                            */s/ Philip A. Medley*
                                            PHILIP A. MEDLEY [1010307]
                                            MATTHEW TROUT [1030119]
                                            Assistant Attorneys General
                                            400 6th Street, N.W.
                                            Washington, D.C. 20001
                                            (202) 724-6626 / (202) 724-5695 (office)
                                            (202) 664-4791 (cell)
                                            (202) 741-5920 / (202) 724-6590 (fax)
                                            philip.medley@dc.gov /
                                            matthew.trout1@dc.gov

                                            *Counsel for Defendants District of Columbia,*
                                            *Peter Newsham, Brian O'Shea, and Adam*
                                            *Sotelo*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TYRELL D. SINGLETON,<br><br>               *Plaintiff*,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>               *Defendants*. | Case No. 1:21-cv-01914-RJL |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY**
**JUDGMENT**

**INTRODUCTION**

In his Complaint, Plaintiff claims that on the evening of May 31, 2020, he was peacefully protesting in the Chinatown neighborhood of the District when officers of the Metropolitan Police Department (MPD) began deploying tear gas, causing him to take refuge inside the Walgreens at 801 7th Street N.W.  Compl. [1] at ¶¶ 12-13.  According to Plaintiff, MPD officers—including Defendants O'Shea and Sotelo—then entered the Walgreens, "dragged [him] through mounds of broken glass, hit him repeatedly with a baton, destroyed his phone and pinned him to the pavement after being put in handcuffs[.]" *Id.* [1] ¶ 14.  The officers allegedly took these actions "[d]espite Plaintiffs [*sic*] pleas, assurances, proof and evidence that he was peaceably protesting and was not committing any crimes[.]" *Id.* [1] ¶ 15.

Unfortunately for Plaintiff, the body-worn camera (BWC) footage of his arrest tells a completely different story.  It shows (1) officers arriving at the Walgreens to the sight of broken windows and individuals inside the store; (2) Plaintiff emerging from the aisles of Walgreens carrying a garbage bag of items; (3) Plaintiff running away from Officer O'Shea and sliding into

"mounds of broken glass" in an effort to exit the Walgreens through a broken window; and (4) Plaintiff actively and physically resisting the officers' attempts to detain him, while repeatedly screaming "They got me!" and "I'm sorry!"

For the reasons stated below, the Court should dismiss or grant judgment to Defendants on all the claims in Plaintiff's Complaint.

## FACTUAL BACKGROUND

On the evening of May 31, 2020 at approximately 11:15 p.m., MPD officers of the— including Defendants O'Shea and Sotelo—responded to a radio bulletin about active looting taking place at the Walgreens at 801 7th Street N.W.  Statement of Material Facts As To Which There Is No Genuine Issue (SMF) at ¶ 1.  The officers' encountered Plaintiff inside the Walgreens.  Their encounter—and subsequent arrest of Plaintiff—was captured by the BWC of Defendant O'Shea.  *Id.* at ¶ 2.

In the footage, Defendant O'Shea exits his MPD vehicle near the intersection of H and 7th Streets N.W.  *Id.* at ¶ 3.a.  He and other officers approach the Walgreens.  *Id.* at ¶ 3.b.  There is no sign that chemical irritants have been deployed in the vicinity.  *Id.*  As the officers approach the Walgreens, Defendant O'Shea states, "They're inside," and "There's one in there—right there, right there, right there!"  *Id.* at ¶ 3.c.  He then states, "Watch—coming out the door, coming out the door!" as he enters the Walgreens through a broken window.  *Id.* at ¶ 3.d.  Broken glass is strewn about on the sidewalk and inside the Walgreens.  *Id.*

As Defendant O'Shea walks through the store, someone inside can be heard yelling "Let's go!" repeatedly.  *Id.* at ¶ 3.e.  Plaintiff suddenly emerges from behind an aisle and runs past Defendant O'Shea.  *Id.* at ¶ 3.f.  Plaintiff was wearing a t-shirt, shorts, gloves, and a blue bandana covering his nose and mouth, and he was carrying a garbage bag containing items—one

of which, based on its silhouette, appears to be a bottle of wine.  *Id.* at ¶ 3.g.  Plaintiff then slides legs-first through glass shards towards one of the broken windows.  *Id.* at ¶ 3.h.  In pursuit, Defendant O'Shea yells "Get him, get him, get him!" *Id.* at ¶ 3.i.

After going through the broken window, Plaintiff immediately encounters officers on the sidewalk, and a struggle ensues.  *Id.* at ¶ 3.j.  Plaintiff repeatedly screams "No!," "They got me!," and "I'm sorry!" while the officers direct him to stop resisting and to back down.  *Id.*  Defendant O'Shea yells "Incoming! Incoming!"  *Id.* at ¶ 3.k.  Plaintiff screams "Get my phone!" and pulls away from the officers to grab his phone, which is lying on the sidewalk in a pile of broken glass.  *Id.* at ¶ 3.l.  The officers continue to try to detain Plaintiff as he continues to resist and scream "They got me!"  *Id.* at ¶ 3.m.  The officers are finally able to secure Plaintiff in handcuffs as loud bangs can be heard in the background.  *Id.*

For the safety of Plaintiff and themselves, the officers pull Plaintiff over to an area near some MPD motorcycles.  *Id.* at ¶ 3.n.  Plaintiff says, "Ok, I'll get up," but the officers order him to stay down.  *Id.* at ¶ 3.o.  An officer again directs Plaintiff to stay down, and Plaintiff says "Ok." *Id.* at ¶ 3.p.  Officer O'Shea radios for a transport and states, "He's probably going to have to go to the hospital."  *Id.* at ¶ 3.q.  Plaintiff responds, "No I'm not!"  *Id.*  Plaintiff starts to get up, and the officers again order him to stay down.  *Id.* at ¶ 3.r.  Plaintiff again starts to get up but the officers put him back down on the ground and order him to stay down.  *Id.* at ¶ 3.s.  An officer asks Plaintiff if he wants to sit up, and Plaintiff responds that he does.  *Id.* at ¶ 3.t.  The officers then take him over to the curb.  *Id.*  Plaintiff asks the officers "Yo, I'm going to jail? For how long?"  *Id.* at ¶ 3.u.  Defendant O'Shea uncuffs Plaintiff's hands and re-cuffs them behind his back.  *Id.* at ¶ 3.v.  He then brings Plaintiff to another officer for transport.  *Id.* at ¶ 3.w.

Plaintiff was arrested and charged with assault on a police officer, second degree burglary, resisting arrest, and felony violation of the Riot Act.  *Id.* at ¶ 4.  Plaintiff was prosecuted for second degree burglary and assault on a police officer.  *Id.* at ¶ 5.  On February 9, 2021, the United States filed a Notice of *Nolle Prosequi*, and the Court dismissed the Criminal Matter.  *Id.*

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on July 15, 2021 naming as defendants the District, Peter Newsham[1], Officer Brian O'Shea, and "Sergeant Sotelo."  Compl. [1] at pp. 1-2.  Plaintiff served the District with process on September 16, 2021, but he has not served the individual Defendants.  *See* Dkt.

The Complaint attempts to assert nine claims:  a claim for "violation of First Amendment rights" (Count I), a claim for "violation of civil rights – [Fourth] Amendment" (Count II), a § 1983 municipal liability claim (Count III), battery (Count IV), false arrest (Count V), malicious prosecution (Count VI), intentional infliction of emotional distress (IIED) (Count VII), negligence against the individual Defendants (Count VIII), and negligent supervision against the District (Count IX).

---

[1]      In his Complaint, Plaintiff identifies Defendant Newsham as "Chief of Police."  Compl. [1] at 1.  But Defendant Newsham retired as Chief of Police in December 2020.  *See* Peter Hermann, Michael Brice-Saddler and Julie Zauzmer, *Mayor Chooses Veteran Officer Robert J. Contee as District's Next Police Chief*, Wash. Post (Dec. 22, 2020, 6:50 p.m.), https://www.washingtonpost.com/local/public-safety/washington-police-chief-newsham-bowser-contee/2020/12/22/34739df8-30ef-11eb-bae0-50bb17126614_story.html.

## LEGAL STANDARD

### A.  Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The Supreme Court has set forth a "two-pronged approach" that a trial court should use when ruling on a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Thus, the basic pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  Once the court has determined that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009).

### B.  Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party in a motion for summary judgment bears the initial burden of identifying evidence that shows that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once a movant has made this initial showing, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In other words, "once the movant has supported a summary judgment motion by evidence of particular events, the court may properly look to the nonmovant for rebuttal evidence either 'from persons familiar with the events,'" or require "the nonmovant to 'otherwise cast more than metaphysical doubt on the credibility of the testimony.'" *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993) (quoting *Bias v. Advance Int'l, Inc.*, 905 F.2d 1558, 1561 (D.C. Cir. 1990)). A trial court should enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

## ARGUMENT

Defendants are entitled to dismissal or judgment as a matter of law on all of Plaintiff's claims. Plaintiff has failed to serve Defendants Newsham, O'Shea, and Sotelo with process, and thus they should be dismissed from this matter. Additionally, Defendant Newsham should be dismissed entirely because Plaintiff makes no allegations against him. Plaintiff's claims for battery, false arrest, and IIED should be dismissed because they are barred by the statute of limitations. The Court should grant judgment as to all of Plaintiff's claims because the indisputable BWC footage shows that the officers had probable cause to arrest Plaintiff and used reasonable force to detain him. Plaintiff has failed to state a claim for First Amendment retaliation, § 1983 municipal liability, malicious prosecution, IIED, negligence, and negligent supervision. The individual Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims as well as qualified privilege on his battery claim. Finally, the District is entitled to judgment on all of Plaintiff's common law claims because he failed to comply with D.C. Code § 12-309.

I.     **Plaintiff Has Failed to Serve Defendants Newsham, O'Shea, and Sotelo.**

Plaintiff has failed to serve Defendants Newsham, O'Shea, and Sotelo with process in this matter. Under Rule 4(m), Plaintiff had 90 days from filing his Complaint—or until October 13, 2021—to serve the Defendants. Fed. R. Civ. P. 4(m).

Rule 4(m) requires the Court to extend the time to serve "if the plaintiff shows good cause for the failure [to timely serve.]" "Good cause exists when some outside factor rather than inadvertence or negligence prevented service, for example, a defendant's intentional evasion of service, or the plaintiff proceeds *in forma pauperis* and was entitled to rely on the United States marshal (or deputy marshal) to effect service." *Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012) (internal quotation marks and citations omitted). Plaintiff has not sought any extension of time to serve, and thus has not shown good cause for his failure to serve.

Because Plaintiff failed to serve Defendants Newsham, O'Shea, and Sotelo, the Court should dismiss them from this matter entirely.

II.    **Plaintiff Makes No Allegations Against Defendant Newsham, and Thus the Court Should Dismiss Him from This Case.**

Plaintiff names Peter Newsham—the former Chief of Police at MPD—as a defendant in this case but does not assert a single factual allegation against Defendant Newsham. *See* Compl. [1], *passim*. Plaintiff has failed to satisfy the most basic tenant of Rule 8, and thus, the Court should dismiss the Complaint in its entirety as to Defendant Newsham. *See Twombly*, 550 U.S. at 555 (noting that Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

**III.   Plaintiff's Claims for Battery (Count IV), False Arrest (Count V), and Intentional Infliction of Emotional Distress (Count VII) Are Barred by the Statute of Limitations.**

In his Complaint, Plaintiff asserts claims of battery (Count IV), false arrest (Count V), and intentional infliction of emotional distress (IIED) (Count VII).  But these claims are barred by the statute of limitations and should be dismissed.  Under the D.C. Code, claims for battery and false arrest must be brought within one year after the accrual of such action.  D.C. Code § 12-301(4).  The Code does not specifically mention IIED.  *See generally* D.C. Code § 12-301.  But if an IIED claim is intertwined with a tort specifically mentioned by § 12-301, then it borrows the identified tort's limitation period, as the emotional distress aspect of the claim is essentially an outgrowth of the other tort.  *Saunders v. Nemati*, 580 A.2d 660, 662-63 (D.C. 1990).  Plaintiff's Complaint makes clear that his IIED claim is indistinguishable from his battery and false arrest claims, and thus his IIED claim is subject to a one-year limitations period.

Plaintiff's purported injury accrued on May 31, 2020——and thus, his battery, false arrest, and IIED claims expired on May 31, 2021. *See C.B. Harris & Co., Inc. v. Wells Fargo & Co.*, 113 F.Supp.3d 166, 170 (D.D.C. 2015) ("As a general rule, '[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs.'" (quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994)).  Plaintiff did not file his Complaint until July 15, 2021.  *See* Dkt.

Because Plaintiff's battery, false arrest, and IIED claims are barred by the statute of limitations, the Court should dismiss Counts IV, V, and VII with prejudice.

**IV.**    **Defendant Officers Had Probable Cause to Stop and Arrest Plaintiff for Second Degree Burglary, and Thus the Court Should Grant Judgment as to Plaintiff's Claims Premised on False Arrest.**

Many of Plaintiff's claims are premised on his allegation that he was falsely arrested on the evening of May 31, 2020.  But as the BWC footage and other indisputable evidence makes clear, the officers had probable cause to arrest Plaintiff for burglary in the second degree.

The core of any complaint for false arrest is "the unlawful detention of a person without a warrant for any length of time whereby he is deprived of his personal liberty or freedom of locomotion . . . by actual force, or by fear of force, or even by word." *Weishapl v. Sowers*, 771 A.2d 1014, 1020 (D.C. 2001) (citing *Dent v. May Dep't Stores, Co.*, 459 A.2d 1042, 1044 (D.C. 1982)).  The existence of probable cause is an affirmative defense that can be raised in response to an accusation of false arrest.  *See Scales v. District of Columbia*, 973 A.2d 722, 729 (D.C. 2009); *and see Campbell v. D.C.*, 245 F. Supp. 3d 78, 90 (D.D.C. 2017).  "Probable cause to arrest exists where the arresting officers have 'facts and circumstances within their knowledge' that are reasonably trustworthy and would 'warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *United States v. Hewlett*, 360 F. Supp. 2d 21, 23 (D.D.C. 2003) (*quoting Draper v. United States,* 358 U.S. 307, 313 (1959)).  "Moreover, probable cause is based on 'practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)).

Because probable cause "deals with probabilities and depends on the totality of the circumstances," *Maryland v. Pringle*, 540 U. S. 366, 371, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois* v. *Gates*, 462 U. S. 213, 232 (1983).  It "requires only a probability or substantial chance of criminal activity, not an

actual showing of such activity." *Id.*, at 243–244, n. 13 (1983). Probable cause "is not a high bar." *Kaley* v. *United States*, 571 U.S. 320, 338 (2014). It is sufficient to defeat a claim of false arrest by demonstrating that an officer had a good faith belief that their conduct was lawful and that the belief was reasonable. *Weishapl*, 771 A.2d at 1021.

The test of a lawful arrest is an objective one. "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause," and thus his "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Scott v. United States*, 878 A.2d 486, 488–89 (D.C. 2005) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *see Jefferson v. United States*, 776 A.2d 576, 580 (D.C.2001) ("And, as a legal matter, if the police had objective reason to stop Jefferson because of his conduct (together with the tip), the fact that they intended to stop and question him based on the radio report alone did not invalidate the seizure." (citing *Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons . . . provid[ing] the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." (citations and quotation marks omitted))).

Under the D.C. Code, an individual commits second degree burglary when he "break[s] and enter[s], or enter[s] without breaking, any . . . store . . . with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or commit any criminal offense." D.C. Code § 22-801(b) (2012 Repl.).

On the evening of May 31, 2020, Defendants O'Shea and Sotelo—among other sworn members of the MPD—responded to a radio bulletin indicating that individuals were actively looting the Walgreens at 801 7th Street N.W. SMF. at ¶ 1. Upon arriving at the Walgreens, the

officers observed broken windows and saw individuals inside the store. *Id.* at ¶¶ 3.b-3.d. Shortly after Defendant O'Shea entered the store, Plaintiff came running out from behind an aisle, carrying a garbage bag full of items. *Id.* at ¶¶ 3.f-3.g. Plaintiff then slid through broken glass towards a window to escape the Walgreens, only to encounter officers on the sidewalk. *Id.* at ¶ 3.h.

The officers arriving on the scene reasonably relied on the radio bulletin which indicated that individuals were looting the Walgreens. *See United States v. Hensley*, 469 U.S. 221, 231-33 (1985). Once they then encountered Plaintiff inside the Walgreens and observed him running out of the store carrying a garbage bag of items, the officers had more than enough trustworthy evidence to believe that Plaintiff had probably committed second degree burglary. Thus, the Court should grant judgment in favor of Defendants as to all of Plaintiff's claims that are premised on the allegation that Defendants falsely arrested Plaintiff.

## V.   <u>The Force Used to Detain Plaintiff Was Reasonable, and Thus the Court Should Grant Judgment as to Plaintiff's Claims Premised on Excessive Force.</u>

Many of Plaintiff's claims are premised on his allegation that Defendants used excessive force against him on the evening of May 31, 2020. But as the BWC footage makes clear, the force used to detain Plaintiff was reasonable.

A police officer cannot be found to have used excessive force in violation of the Fourth Amendment if his actions were objectively reasonable given the facts and circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The reasonableness of the officer's conduct is "judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* Courts necessarily allow for the fact that the police must often make split-second judgments about the amount of force warranted in circumstances that are

tense, uncertain, and rapidly evolving. *Id.* at 396-97; *accord Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011).

As the Supreme Court explained in *Graham*, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. An officer's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect" the arrest. *Id.*; *see Wardlaw v. Pickett*, 1 F.3d 1297, 1302 (D.C. Cir. 1993) (officers "must be free to use the reasonable force necessary to effect an arrest"). Thus, "an officer will only be held liable" under the Fourth Amendment "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1999).

The BWC footage shows that the force used by the officers to detain Plaintiff was objectively reasonable. As Plaintiff escaped through the broken window, he immediately encountered officers on the sidewalk who attempted to detain him. SMF at ¶ 3.j. For approximately one minute, Plaintiff flailed his body and ignored the officers' orders to stop resisting and to back down. *Id.* at ¶¶ 3.j-3.m. The officers used only enough force to secure Plaintiff in handcuffs, and once they did, they stopped using said force.

Because the force that the officers used to secure Plaintiff was objectively reasonable, the Court should grant judgment in favor of Defendants as to all of Plaintiff's claims that are premised on the allegation that Defendants used excessive force against Plaintiff.

## VI.    The Court Should Dismiss or Grant Judgment on Plaintiff's Claim for First Amendment Retaliation (Count I).

Plaintiff claims that the officers used excessive force against him in violation of his First Amendment rights. Save for a few superficial references to freedom of speech and the right to

protest, Plaintiff's First Amendment claim appears identical to his Fourth Amendment excessive

force claim (Count II)—*see* Compl. [1] at pp. 6-9—and thus it should be dismissed either for

being duplicative of Count II or for the reasons stated in Section V, *supra.*  But assuming

Plaintiff is attempting to assert a First Amendment *retaliation* claim, Plaintiff has failed to state a

claim upon which relief could be granted.

To establish any claim of retaliation under the First Amendment, a "plaintiff must show a

causal connection between a defendant's retaliatory animus and subsequent injury."  *Hartman v.*

*Moore*, 547 U.S. 250, 259 (2006); *see Lash v. Lemke*, 786 F.3d 1, 10 (D.C. Cir. 2015) ("A

plaintiff pressing a First Amendment retaliatory force claim must show, among other things, that

the officer who used force against him had 'retaliatory animus.'" (quoting *Trudeau v. Fed. Trade*

*Comm'n,* 456 F.3d 178, 191 n. 23 (D.C.Cir.2006))).  "It is not enough to show that an official

acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the

injury."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

In his Complaint, Plaintiff does not allege—even in a conclusory fashion—that

Defendants were motivated by retaliatory animus, let alone allege facts supporting retaliatory

animus.  Thus, the Court should dismiss Count I for failure to state a claim.

## VII.    The Individual Defendants Are Entitled to Qualified Immunity on Plaintiff's § 1983 Claims (Counts I and II).

The officers are entitled to qualified immunity on Plaintiff's § 1983 claims.  "To survive

a motion to dismiss [on qualified immunity grounds], [the plaintiff] must . . . allege facts

sufficient to show that [the defendant] violated a clearly established constitutional right, or that

[he was] on notice of the illegality of [his] actions."  *Turpin v. Ray*, 319 F. Supp. 3d 191, 200

(D.D.C. 2018).  "'Clearly established' means that, at the time of the officer's conduct, the law

was sufficiently clear that every reasonable official would understand that what he is doing is

unlawful.  In other words, existing law must have placed the constitutionality of the officer's

conduct beyond debate.  This demanding standard protects all but the plainly incompetent or

those who knowingly violate the law."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589

(2018) (citations and quotation marks omitted).

"[S]pecificity is especially important in the Fourth Amendment context, where . . . '[i]t is

sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to

the factual situation the officer confronts.'"  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting

*Saucier v. Katz*, 533 U.S. 194, 205 (2001)).  "Use of excessive force is an area of the law 'in

which the result depends very much on the facts of each case,' and thus police officers are

entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at

issue."  *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (quoting *Mullenix*, 577 U.S. at 13).  In

determining whether the legal rights at issue are clearly established, a court must look to "cases

of controlling authority in [its] jurisdiction."  *Wilson v. Layne*, 526 U.S. 603, 615 (1999).  If there

is no such controlling authority, then a court must determine whether there is "a consensus of

cases of persuasive authority."  *Id.*  The Supreme Court has "stressed the importance of resolving

immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224,

227 (1991).

To overcome qualified immunity, Plaintiff would have to show that the officers—who

were responding to a report of active looting inside the Walgreens and encountered Plaintiff

inside the store with a bag of items—violated a clearly established constitutional right when they

arrested him and used force to detain him.  Plaintiff cannot do so, and thus the officers are

entitled to qualified immunity on his § 1983 claims.  And while Defendants *do not* bear the

burden of showing that their actions were constitutional—*see Dukore v. District of Columbia,*

14

799 F.3d 1137, 1145 (D.C. Cir. 2015) (holding that under qualified immunity analysis, plaintiffs

bear the burden of showing that "the particular right in question . . . was clearly established")—

controlling authority still validates the constitutionality of their conduct, as explained in Sections

IV and V, *supra.*

Because the officers are entitled to qualified immunity, the Court should grant judgment

in favor of the individual Defendants as to Plaintiff's § 1983 claims (Counts I and II).

## VIII.    The Court Should Dismiss or Grant Judgment on Plaintiff's § 1983 Municipal Liability Claim (Count III).

In his Complaint, Plaintiff tries to assert a claim against the District for municipal

liability under 42 U.S.C. § 1983.  But he fails to plausibly allege a municipal liability claim.

Section 1983 does not allow *respondeat superior* liability.  *Monell v. New York City Dep't of*

*Soc. Servs.*, 436 U.S. 658, 691 (1978).  A plaintiff must allege (1) a predicate constitutional

violation and (2) "that a custom or policy of the municipality caused the violation."  *Baker v.*

*District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  As the Supreme Court explained in

*Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its

employees or agents.  Instead, it is when execution of a government's policy or custom . . .

inflicts the injury that the government as an entity is responsible under § 1983."  436 U.S. at 694.

For the reasons explained in Sections IV and V *supra,* Plaintiff does not clear the hurdle

of showing that he suffered a predicate violation of his constitutional rights.[2]  But even if he

---

[2]      Plaintiff also claims that his municipal liability claim is based on the District's supposed
violation of his rights under "Title II" and "Title VI".  *See* Compl. [1] at ¶ 41.  Although Plaintiff
has not identified which statute is applicable to his Title II claim, his reference to a Title II's
prohibition on disability discrimination implies he is referring to Title II of the American with
Disabilities Act (ADA).  However, the ADA does not give rise to an action under § 1983.  *See*
*Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that Title II of the ADA
contains its own comprehensive enforcement mechanism that forecloses suit under § 1983 to
vindicate rights in the ADA); *Tri-Corp. Housing v. Bauman*, 826 F.3d 446, 448-49 (7th Cir.

had, he has failed to plead facts showing that such a deprivation was caused by an official municipal policy.

The Circuit has identified four ways official municipal policy can be demonstrated: (1) express municipal policy; (2) actions of a final municipal "policymaker"; (3) persistent conduct by non-policymakers (*i.e.* "custom" with force of law); and (4) "deliberate indifference" to a risk of constitutional injury. *See Baker*, 326 F.3d at 1306–07 (citations omitted).  Each theory has its own elements, which a § 1983 plaintiff bears the burden of pleading in accordance with *Iqbal*.  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015).  Additionally, under any theory, a municipal liability claim separately requires proof of causation—specifically, an "affirmative link" between the alleged municipal policy and the alleged constitutional violation, "such that [the former] was the moving force behind the [latter]."  *Baker*, 326 F.3d at 1306.

In his Complaint, Plaintiff does not specify which of the four theories he is pursuing. *See generally* Compl. [1] at ¶¶ 39-43.  His use of the phrase "pattern or practice of conduct"— *id.* [1] at ¶ 41—suggests that he is perhaps pursuing the third theory (i.e. that his rights were violated pursuant to a custom).  To establish municipal policy arising from custom, a § 1983 plaintiff bears the burden of putting forth "evidence that the municipality's employees engaged in a persistent or regular pattern of conduct that gave rise to the alleged constitutional

---

2016).  And Plaintiff has not pled any facts to sustain such a claim: he does not assert that he is disabled or that he was denied any rights due to a disability.  Nor can Plaintiff sustain a § 1983 action under by claiming disparate impact in violation Title VI of the Civil Rights Act of 1964. *See, e.g., South Camden Citizens in Action v. New Jersey Dep't of Environ. Prot.*, 274 F.3d 771, 789-90 (3d Cir. 2001) (holding that "Title VI does not establish a right to be free of disparate impact discrimination," and rejecting the plaintiff's claim of disparate impact in violation of Title VI, brought under § 1983).  Moreover, Plaintiff has failed to plead any facts that he was subject to disparate impact discrimination under a program receiving federal financial assistance because of his race, color, or national origin.  Any claim Plaintiff has alluded to under either statute fails to state a claim.

violations." *Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 41 (D.D.C. 2014) (citing

*Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)).  A plaintiff can do so by

identifying past events involving government actions that are *prima facie* identical to the

alleged wrongdoing underlying his claim.  *See e.g., id.* at 41 (report "analyz[ing] data related to

disorderly conduct arrests [but] tailored toward exposing racial disparities" could not show

policy or custom of "violat[ing] an individual's free speech right or the right to be free from an

unlawful seizure"); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133-34 (D.D.C. 2011)

(report could not evidence municipal custom where "plaintiff was not arrested for the offense

examined in the report"); *Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 38 (D.D.C.

2010) (plaintiff's allegations of six separate instances of unlawful public strip searches within

two years involving numerous officers were sufficient to state a claim of a municipal custom).

Here, Plaintiff does not even attempt to satisfy the standard.  He cites no other instances

of the District violating an individual's constitutional rights in an identical—or even similar—

way, and cites to no specific facts that would establish the District has an unconstitutional

custom, policy, or practice.  *See* Compl. [1], *passim*.  Thus, the Court should dismiss Plaintiff's

claim for municipal liability under § 1983 (Count III).

## IX.    <u>Plaintiff Did Not Comply with D.C. Code § 12-309 and the Court Should Grant Judgment in Favor of the District as to Plaintiff's Common Law Claims.</u>

A claimant seeking to bring a tort claim for unliquidated damages against the District of

Columbia must give notice in writing to the Mayor within six months after the injury or damages

were sustained, and the notice must provide "the approximate time, place, cause and

circumstances of the injury or damage."  D.C. Code § 12-309.  Compliance with the notice

requirement is "a *mandatory prerequisite* to filing a lawsuit against the District."  *Hardy v.*

*District of Columbia,* 616 A.2d 338, 340 (D.C. 1992) (emphasis added).  "Unlike a statute of

17

limitations, which can be tolled through the discovery rule, § 12-309 starts the clock at the instant an injury or damage is sustained." *Brown v. District of Columbia*, 853 A.2d 733, 736-737 (D.C. 2004). Strict compliance with the requirement that timely notice be given to the District is mandatory, while greater liberality is appropriate with respect to the content of the notice. *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995).

Under § 12-309, "[a] report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice[.]" But "the existence of a police report does not necessarily mean that the District has received the type of actual notice which § 12–309 contemplates—that is, information as to the time, place, cause and circumstances of the injury or damage which is the basis for the claim." *Allen v. District of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987). The police report must "describe[] the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability." *Washington v. District of Columbia*, 429 A.2d 1362, 1366 (D.C. 1981). "Indeed, a police report of an arrest is presumptively devoid of any notice of a potential claim of injury or damage from . . . assault and battery[] or negligence." *Allen*, 533 A.2d at 1263.

Plaintiff had until November 31, 2020 to provide his § 12-309 notice to the District. Instead, he attempted to provide notice to the District only on January 25, 2021.[3] SMF at ¶ 6. And the arrest report associated with Plaintiff's arrest does not satisfy Plaintiff's notice obligation. The operative question in analyzing whether the police report satisfies § 12-309 is whether the District should have anticipated that Plaintiff would file a complaint for battery, false arrest, malicious prosecution, IIED, or negligence when it received the report. *See Allen*,

---

[3]    The District does not concede that the substance of Plaintiff's notice satisfies § 12-309. But because Plaintiff's notice was late, the Court need not reach this question.

533 A.2d at 1262.  Here, the answer is 'no.'  As was the case in *Allen*, the facts of Plaintiff's

arrest as detailed in the arrest report "did not indicate a basis for potential liability over and

above that which exists in many law enforcement operations."  *Id.* at 1263; *see* Ex. 4, Arrest

Report.

Because Plaintiff failed to satisfy the requirements of § 12-309, this Court should grant

judgment in favor of the District as to Plaintiff's common law claims.

## X.   Defendants Are Entitled to Qualified Privilege on Plaintiff's Battery Claim (Count V).

Even if Plaintiff's claim for battery was not barred by the statute of limitations—*see*

Section III *supra*—the Court should grant summary judgment to the Defendants on this claim

because the officers were entitled to a qualified privilege as to the force used on Plaintiff.  "A

police officer has a qualified privilege to use reasonable force to effect an arrest, provided that

the means employed are not 'in excess of those which the actor reasonably believes to be

necessary.'"  *Etheredge v. District of Columbia,* 635 A.2d 908, 916 (D.C. 1993) (quoting

*Jackson v. District of Columbia*, 412 A.2d 948, 956) (D.C. 1980)).  And any person "is justified

in using reasonable force to repel an actual assault, or if he reasonably believes he is in danger of

bodily harm."  *Johnson v. Jackson*, 178 A.2d 327, 328 (D.C. 1962).

"In determining the applicability of qualified privilege, the District of Columbia courts

use the same objective reasonableness standard applicable to qualified immunity under § 1983."

*Wallace*, 685 F. Supp. 2d at 112.  Thus, for the same reasons stated in Section VII *supra*, the

officers are entitled to a qualified privilege, and the Court should grant judgment in favor of

Defendants on Plaintiff's battery claim.

**XI.    The Court Should Dismiss or Grant Judgment on Plaintiff's Malicious Prosecution Claim (Count VI).**

Plaintiff attempts to assert a claim of malicious prosecution.  To state such a claim, a plaintiff must establish "1) that the underlying suit terminated in plaintiff's favor; 2) malice on the part of the defendant; 3) lack of probable cause for the underlying suit; and 4) special injury occasioned by plaintiff as the result of the original action."  *Joeckel v. Disabled Am. Veterans,* 793 A.2d 1279, 1282 (D.C. 2002).  For the reasons stated in Section IV *supra,* the government had probable cause to prosecute Plaintiff for second degree burglary, and thus Plaintiff cannot satisfy the third element of a *prima facie* case.

But Plaintiff has also failed to state facts indicating that the underlying suit terminated in his favor.  "[A] termination of a criminal prosecution will only be deemed favorable where the termination 'reflect[s] on the merits of the underlying action.'"  *Mehari v. District of Columbia,* 268 F. Supp. 3d 73, 83 (D.D.C. 2017) (quoting *Lucas v. District of Columbia*, 505 F.Supp.2d 122, 127 (D.D.C. 2007)).  In his Complaint, Plaintiff alleges only that on February 9, 2021, the government filed a "Notice of Nolle Prosequi and dismissed the charges."  Compl. [1] at ¶ 61.  He states nothing about the circumstances of the dismissal.  *See id.* [1] at ¶¶ 58-64.  "[A]bandonment of a criminal case 'has been held to be a favorable termination where the facts of the case indicate that such a disposition reflects on the innocence of the defendant in the underlying suit,'"—*Mehari*, 268 F. Supp. 3d at 83. (quoting *Lucas*, 505 F.Supp.2d at 127)—but Plaintiff must still identify such facts to survive dismissal.  *See id.*; *see also O'Quinn v. District of Columbia*, 1988 WL 23244, at *2 (D.D.C. March 4, 1988) (noting that "[p]rosecutors may dismiss or *nolle prosequi* cases for a whole host of reasons. . . . But where prosecutors have not stated their reasons, there is really no way for this Court to conclude that these were favorable.").

Because Plaintiff has failed to state a claim for malicious prosecution, the Court should dismiss Count VI.

**XII.**   **The Court Should Grant Judgment on Plaintiff's IIED Claim (Count VII).**

In his Complaint, Plaintiff asserts a claim of IIED.  To establish IIED, a plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984).  Conduct rises to extreme and outrageous "only when the conduct goes beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community."  *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (internal citations and quotation marks omitted).  "This very demanding standard is infrequently met."  *Cooke-Seals v. District of Columbia,* 973 F. Supp. 184, 186 (D.D.C. 1997).  Improper police actions do not meet this standard unless the actions are truly egregious.  *Compare Amons v. District of Columbia*, 231 F. Supp. 2d 109, 118 (D.D.C. 2002) (finding that the standard was met where the police unlawfully entered plaintiff's home, shot his dog, detained him for 22 hours, and permitted his property to be stolen); *with Smith v. District of Columbia*, 882 A.2d 778, 790 (D.C. 2005) (finding that the standard was not met where the officer applied an illegal choke-hold and jerked plaintiff's head so violently that his jaw broke in two places).

As the BWC footage shows, the conduct of the officers who arrested Plaintiff was not extreme or outrageous.  *See generally* Ex. 2, O'Shea BWC Footage.  The officers had probable cause to arrest Plaintiff, and they used a reasonable amount of force—in the face of Plaintiff's continual resistance—to detain him.  Thus, the Court should grant judgment in favor of Defendants as to Plaintiff's IIED claim (Count VII).

**XIII.**    **The Court Should Dismiss Plaintiff's Negligence Claim Against the Individual Defendants (Count VIII).**

Plaintiff's negligence claim against the individual Defendants appears indistinguishable from his claims premised on false arrest and excessive force, except that Plaintiff adds conclusory legal terms like "duty of care" and "breach."  Compl. [1] at ¶¶ 69-74.  But Plaintiff cannot state a claim for negligence premised on intentional conduct.  "Intent and negligence are regarded as mutually exclusive grounds for liability."  *Harris v. U.S. Dept. of Veterans Affairs,* 776 F.3d 907, 916 (D.C. Cir. 2015) (quoting *District of Columbia v. Chinn*, 839 A.2d 701, 706 (D.C. 2003)).  "[W]hile it is true that one incident may give rise to claims of intentional tort or negligence, these are separate theories of liability which must be presented individually and founded on appropriate evidence."  *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000).  "Where a plaintiff does not allege or prove a distinct negligence ground, the negligence claim should be dismissed."  *Reed v. District of Columbia*, 474 F.Supp.2d 163, 172 (D.D.C. 2007).  A plaintiff cannot sustain a negligence claim simply by using conclusory words such as "carelessly and negligently" without alleging a factual basis to support the claim.  *Chinn*, 839 A.2d at 708.

Plaintiff premises his negligence claim against the individual Defendants on the same allegations of intentional conduct that underlies his claims of false arrest and excessive force. *See generally* Compl. [1].  Thus, the Court should dismiss Count VIII.

**XIV.**    **The Court Should Dismiss Plaintiff's Claim for Negligent Training and Supervision (Count IX).**

Although labeled simply "Negligence," Plaintiff appears to be asserting a negligent supervision claim against the District.  *See id.* [1] at 75-78.  Negligent supervision is not a theory of vicarious liability; rather, it is a theory of direct liability against the employer.  *See Phelan v.*

*City of Mount Rainier*, 805 A.2d 930, 937 (D.C. 2002).  Establishing negligent supervision requires that a plaintiff "show that an employer knew or should have known its *employee* behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985) (emphasis in original).

Plaintiff fails to allege any specific facts about the District's actual or constructive knowledge of dangerous or otherwise incompetent behavior on the part of the individually named officers. *See generally* Compl. [1]*.*  Thus, Plaintiff has failed to state a claim for negligent supervision.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should dismiss Plaintiff's Complaint or grant summary judgment in favor of Defendants.

Date:    November 8, 2021

Respectfully submitted

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Stephanie E. Litos*
STEPHANIE E. LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Philip A. Medley*
PHILIP A. MEDLEY [1010307]
MATTHEW TROUT [1030119]
Assistant Attorneys General
400 6th Street, N.W.
Washington, D.C. 20001
(202) 724-6626 / (202) 724-5695 (office)
(202) 664-4791 (cell)

(202) 741-5920 / (202) 724-6590 (fax)
philip.medley@dc.gov /
matthew.trout1@dc.gov

*Counsel for Defendants District of Columbia,*
*Peter Newsham, Brian O'Shea, and Adam*
*Sotelo*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TYRELL D. SINGLETON,

          *Plaintiff*,

    v.

DISTRICT OF COLUMBIA, *et al.*,

          *Defendants*.

Case No. 1:21-cv-01914-RJL

## ORDER

Upon considering Defendants Motion to Dismiss or in the Alternative Motion for Summary Judgment, the Statement of Material Facts as to which There is No Genuine Issue, the Memorandum of Points and Authorities, any opposition thereto, and the entire record herein, it is this _____ day of _____ 2021, hereby

    **ORDERED** that Defendants' Motion is **GRANTED**; and it is further

    **ORDERED** that this matter is dismissed in its entirety **WITH PREJUDICE**.

                _____
                HON. RICHARD J. LEON
                United States District Court