## IN THE UNITED STATES DISTICT COURT
## FOR THE DISTIRCT OF COLUMBIA

TYRELL D. SINGLETON                    )
                                       )
Plaintiff,                             )
                                       )
                                       )
                                       )
vs.                                    )
                                       )   Case No. **1:21-CV-01914-RJL**
DISTRICT OF COLUMBIA, et. al           )
                                       )
Defendant                              )
                                       )
                                       )
                                       )
_____        )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN LIEU OF ALTERNATIVE MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF AMENDING COMPLAINT

Plaintiff, by and through undersigned counsel, submits this memorandum in support of his Opposition to Defendant, District of Columbia's Motion to Dismiss or in Lieu of Alternative Motion for Summary Judgment("MTDMSJ") and Plaintiff's Request for Leave to Amend and states as follows:

INTRODUCTION

On May 31, 2020, Plaintiff was in the District of Columbia as part of the protests held in response to the plethora of police brutality against African Americans-most notably, the tragic death of George Floyd. As was widely witnessed on television, District of Columbia Metropolitan Police and other law enforcement agencies used diverse tactics to disperse the crowd of protesters- tear gas, rubber bullets, aerial surveillance, loudspeakers, baton, shield, etc. Plaintiff claims in his

1

complaint that he sought refuge in a Walgreens store from the tear gas, debris, and other projectiles that abound the area where he was walking.  Defendants apprehended Plaintiff as he was running out of the Walgreens store. (*BWC video[ECF 11-2])* Plaintiff contends that he was injured as result of Defendant officer's excessive use of force, detention and subsequent prosecution of Plaintiff.

Defendants introduced what they purport to be a complete BWC video capturing the interaction between Plaintiff and the defendant officers. Defendants claim that the video and audio of Plaintiff's conduct warrant his arrest and subsequent prosecution for burglary, *inter alia.* Yet, there are flaws in Defendants' ubiquitous assumptions that the submitted body camera footage tells the complete story of the events of May 31, 2020.  Important to this Court's full objective analysis of the Plaintiff's claims there is a need for a full course of discovery that would include issuing subpoenas and deposing witnesses to Plaintiff's unlawful detention and arrest.  Notably, in the BWC video at 0:5:18, there is a gentleman sitting on the curb next Plaintiff.  This gentleman is also detained by police. The Court would also need to examine the deposition testimony of the defendant officers and the other officers featured in the BWC video.  Defendants' charged Plaintiff with burglary-knowing fully that no stolen merchandise was found on Plaintiff's person. (Ex. 1) Defendants' charged Plaintiff with assault on police- yet the video shows plaintiff subdued, and the recipient of violence extolled by the defendant officers. (ECF-11-2) Plaintiff is heard exclaiming "they got me." (Id.) in the BWC video; however, this Court needs to understand the context of those statements.

That night, as shown in national and international media, law enforcement was used as a weapon by then President Trump to quell and disperse protesters like Plaintiff.  Plaintiff's cries of "they got me," was not an indication of admitting

wrong, but rather a cry for help from what he perceived as a threat to his safety-Metropolitan Police. However, this is testimony that needs to be heard and analyzed by this Court and a jury. The U.S. Attorney's decision to dismiss [*nolle prosequi]* the criminal charges in his favor of Plaintiff gave cause for his claim for malicious prosecution. Plaintiff filed his civil complaint against defendants with the following counts: (1) Violation of First Amendment Rights by Defendants the District of Columbia, Officer O'Shea, Sergeant Sotelo and other unnamed MPD Officers;(2) Violation of Civil Rights-4th Amendment; (3) Monell Claim; (4) Battery By Individual Defendants; (5) False Arrest and Illegal Imprisonment by Individual Defendants;(6)Malicious Prosecution; (7) Intentional Infliction of Emotional Distress; (8) Negligence of Officer O'Shea, Sergeant Sotelo and unnamed MPD officers; (9) Negligence of Metropolitan Police Department (ECF 1). Defendants filed their Motion to Dismiss or in Lieu of Alternative Motion for Summary Judgment. (ECF 11)

Defendants Motion to Dismiss and Motion for Summary Judgment should be denied, and Plaintiff should be granted leave to file an amended complaint.


## STATEMENTS OF MATERIAL FACTS IN DISPUTE

1. Defendant O'Shea's BWC shows Plaintiff being repeatedly struck [assaulted] with baton by an officer who yells "back down" as plaintiff is being held by defendants and possibly John Doe officers. [See ECF 11-2 @ 01.44]

2. Plaintiff cries out "help me…help me]. Plaintiff is in fear for his life/safety. [see ECF-11-2 BWC @ 01:57]

3. Plaintiff cry's out..." help me…help me", as he is struck multiple times with a baton as he is pushed to the ground…...a ground full blood, broken glass and other debris. [see Id@ 02:08-02:10]

4. Sounds of multiply explosions, possible gun shots or smoke cannisters being fired. These explosions further frighten plaintiff. [Id @ 02:24]

5. Plaintiff is handcuffed then a defendant says "Lets drag him out" [see Id 02:31]

6. Defendants commence to drag plaintiff on his back, on the ground which is cluttered with blood, broken glass and debris…..plaintiff was dragged across the street, to the opposite street corner. As plaintiff is being dragged in desperation cries out…"they got me". [see Id at 02:39]

7. Defendant continues to drag plaintiff through the glass as he is handcuffed, causing additional emotional bodily injuries. [see Id at 02:53]

8. Plaintiff says, "ok I get up". Plaintiff was in pain from laying in glass and debris. Defendants reply, "stay down" …as plaintiff remains of his back [Id at 03:00]

9. Defendant says "we need a transport 7th and H, west side of street…. he probably has to go to the hospital". [Id at 03:24]

10. Plaintiff tries to standup because of the pain caused by glass and debris. Defendant shouts "Keep your ass down." [Id at 03:43]

11. Defendant says, "I'm going to take one handcuff off and put them around you back…if you fuck around its going to be a bad day. Plaintiff relies "ok!" [Id at 05:19]

12. Defendant then exclaims "do not remove a fucking hand until I tell you to". [Id at 05:27]

13. Plaintiff politely ask "how long will be locked up sir" as he was placed in a police transport wagon. [see Id at 06:01]

14. Plaintiff did not assault any officer. {see BWC}

15. Plaintiff did not have any stolen merchandise on his person. {See ECF 11-2 and Ex. 1}

16. The police and affidavit of charges filed against Plaintiff satisfies the notice exception to D.C. Code 12-309.

17. The Superior Court of District of Columbia issued an order January 13, 2021, continuing to suspend the statute of limitations and statutory deadlines. (Ex. 4)

18. The Superior Court of District of Columbia issued an order May 19, 2021, continuing to suspend the statute of limitations. (Ex. 5)

19. Plaintiff's 12-309 was filed timely. (Ex. 3)

## STANDARD OF REVIEW

### Motion to Dismiss & Amendments

In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476, 400 U.S. App. D.C. 218 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608, 199 U.S. App. D.C. 23 (D.C. Cir. 1979). Where more carefully drafted complaint might state claim, plaintiff must be given at least one chance to amend complaint before district court dismisses action with prejudice. *McCray v. Veneman*, 298 F. Supp. 2d 13, 2002 U.S. Dist. LEXIS 27017 (D.D.C. 2002). Purpose of allowing amendment is to permit final decision on merits, not on technicalities. Reaves v. Sielaff, 382 F. Supp. 472, 1974 U.S. Dist. LEXIS 6791 (E.D. Pa. 1974). District court abused its discretion in dismissing claims on grounds of lack of particularity under Rule 9(b) without granting leave to amend complaint, since possibly meritorious claims should not be dismissed because of defects in pleadings without plaintiffs being afforded additional, final opportunity to conform pleadings to requirements of Rule 9. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 38 Fed. R. Serv. 3d (Callaghan) 557, Fed. Sec. L. Rep. (CCH) ¶ 99485, Fed. Sec. L. Rep. (CCH) ¶ 99485, 1997 U.S. App. LEXIS 13792 (3d Cir. 1997).

### Summary Judgment

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003, 386 U.S. App. D.C. 239 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 7, 373 U.S. App. D.C. 236 (D.C. Cir. 2006). Motion for summary

judgment should be scrutinized carefully in order that no litigant may be deprived of opportunity to present proof in proper case. *Tunstall v. Brotherhood of Locomotive Firemen & Enginemen,* 69 F. Supp. 826, 19 L.R.R.M. (BNA) 2051, 1946 U.S. Dist. LEXIS 1850 (D. Va. 1946), aff'd, 163 F.2d 289, 1 Empl. Prac. Dec. (CCH) ¶ 9613, 9 Fair Empl. Prac. Cas. (BNA) 395, 20 L.R.R.M. (BNA) 2497, 13 Lab. Cas. (CCH) 63981, 1947 U.S. App. LEXIS 2995 (4th Cir. 1947).

Federal Rule of Civil Procedure 56(d) 3 allows a court to deny a motion for summary judgment or defer deciding the motion if the nonmoving party shows that it cannot present facts essential to justify its opposition. *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010). Rule 56(d) is provided to ensure that the non-moving party isn't "railroaded" by a premature motion for summary judgment. *United States ex rel. Folliard v. Gov't Acquisitions, Inc.,* 880 F. Supp. 2d 36, 40-41 (D.D.C. 2012). "Pre-discovery summary judgment motions are usually premature and hence disfavored." *Thompson v. Fathom Creative, Inc.*, 626 F. Supp. 2d 48, 53 (D.D.C. 2009) (quoting *Bourbeau v. Jonathan Woodner Co.*, 600 F. Supp. 2d 1, 3 (D.D.C. 2009)). Summary judgment "ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" *Americable Int'l, Inc. v. Dep't of Navy,* 327 U.S. App. D.C. 159, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (quoting *First Chicago Int'l v. United Exch. Co.,* 267 U.S. App. D.C. 27, 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Under Federal Rule of Civil Procedure 56(f), a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control & Disarmament Agency,* 275 U.S. App. D.C. 37, 864 F.2d 859, 861 (D.C. Cir. 1989); *Londrigan v. FBI,* 216 U.S. App. D.C. 345, 670 F.2d 1164, 1175 (D.C. Cir.

1981). The district court has discretion in determining whether it should permit additional discovery before the motion for summary judgment is resolved. *Stella v. Mineta,* 350 U.S. App. D.C. 300, 284 F.3d 135, 147 (D.C. Cir. 2002).

## ARGUMENT

I.    *Defendants O'shea and Sotelo should not be Dismissed from the Complaint*

Plaintiff's counsel was communicating with counsel for the Defendants after filing this action. During the communications, Defendants' counsel asserted that (1) he needed additional time to investigate the matter;(2) defendants O'shea and Sotelo would likely retain his office to represent them and file one response after service. *(ECF 5)*. In suit alleging unlawful arrest was removed to federal district court, defendant effectively waived his right to contest inadequate service due to his filings in state court prior to removal because under applicable state rules and procedures, his assertion that complaint failed to state claim upon which relief could be granted rendered his appearance general, which made it equivalent to personal service of process under applicable Virginia law. *McPhearson v. Anderson,* 874 F. Supp. 2d 573, 2012 U.S. Dist. LEXIS 96069 (E.D. Va. 2012).

Here, when Defendants filed their Motion for Summary Judgment *(ECF 11),* they effectively waived their right to contest adequate service. Defendant's motion for summary judgment, including exhibits and video, specifically attack the merits of Plaintiff's complaint; thus, this specific responsive pleading filed by counsel

waives any service of process issues.  Consequently, Defendant's request to be dismissed from this Complaint should be denied.

II.    *Plaintiff's Battery Claims, False Arrest Claims and Intentional Infliction of Emotional Distress Claims Must Not Be Dismissed Since the District Extended the Statute of Limitations*

On May 19, 2021, the Superior Court for the District of Columbia issued another of its Covid-19 State of Emergency Order (Ex. 5) Contained within the March 30, 2021, Order was a directive suspending the statute of limitations.  A reading of this Covid-19 Order also covers Plaintiff's claims against the defendants. Consequently, Plaintiff's filing his complaint on July 15, 2021, was timely. Plaintiff's claims for battery, false arrest and intentional infliction of emotional distress should not be dismissed.

III.    *Defendant Officers Did Not Have Probable Cause to Arrest Plaintiff for Burglary*

Plaintiff's claims stem from the incident on May 31, 2020. The defendants rely on its subjective interpretation of the BWC video. Yet, the BWC footage and the accompanying still frames show that Plaintiff was not carrying stolen goods from Walgreens. Under statute defining burglary the offense is committed if the act of entering was with the intent to commit the misdemeanor of petty larceny. D.C. Code § 22-1801(b). *United States v. Cooper*, 473 F.2d 95, 153 U.S. App. D.C. 384, 1972 U.S. App. LEXIS 6815 (D.C. Cir. 1972).

Here, the call defendant officers received allegedly about looting must be measured by what the officers saw when they arrived at the Walgreens and arrested Mr. Singleton. Analyzing the BWC footage, using defendants' argument, they caught Plaintiff in the middle of committing a burglary. The plaintiff was detained, the scene was secured, Defendant officers searched the plaintiff and canvased the scene. Yet, neither officer mentioned in the affidavit charging documents that goods/merchandise from Walgreens was found on Mr. Singleton or anywhere close to him. (Ex. 1) Crime of burglary is established by unlawful entry accompanied by intent to steal, though such intent may be conditioned on locating property which the offender desires to remove. D.C. Code § 22-1801(b). *United States v. Sinclair*, 444 F.2d 888, 144 U.S. App. D.C. 13, 1971 U.S. App. LEXIS 11027 (D.C. Cir. 1971).

Again, the Defendants produced no evidence that Plaintiff intended to carry away with anything from Walgreens. Further, Defendants admit that Plaintiff had nothing on him belonging to Walgreens. (Ex. 1). Defendant officers had ample time when Plaintiff was detained by the to find and produce contraband to warrant Plaintiff's arrest for burglary. Yet, the BWC footage, affidavit of charges, and charging documents are void of any indication that Plaintiff stole from Walgreens. Clearly, the last element needed to proceed with an arrest for burglary was missing.

Moreover, to fully analyze the nature of Plaintiff's detention by Defendants and subsequent arrest will require a complete course of discovery. Summary judgment should not be granted while parties opposing judgment seek discovery of potentially favorable information. *Olin Corp. v. Insurance Co. of N. Am.*, 603 F.

Supp. 445, 22 Env't Rep. Cas. (BNA) 1618, 1985 U.S. Dist. LEXIS 22033 (S.D.N.Y. 1985).

Hence, this Court should deny Defendants' request for summary judgment on Plaintiff's count for false arrest.

IV.    *There is Insufficient Evidence to Conclude that the Force Used Against the Plaintiff was Objectively Reasonable-Plaintiff's 4th Amendment Claim Should Stand*

Plaintiff claims that defendant's O'Shea and Sotelo's conduct amounted to use of excessive force and thus violate his Fourth Amendment rights. Claims for excessive force are governed by the Supreme Court's ruling in *Graham vs. Connor*, 490 US 386 (1989). The Court in *Graham* held that excessive force used during an arrest and investigatory stop, or 'any other "seizure" of a person at liberty is judged by the Fourth Amendment standards. The Court concluded that there should be "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham 490 US*. Furthermore, reasonableness must be judged from the perspective of a reasonable officer on the scene, not on hindsight. It doesn't depend on and cannot be influenced by an officer's underlying intention, or motivation for employing force. *Id.* An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force, nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *Graham*, 490 US at 397.

Utilizing the Graham test, defendant O'Shea and defendant Sotelo's use of force was a violation of Plaintiff's Fourth Amendment rights. Mr. Singleton was not a threat to the officers. He was subdued, on the ground and crying for help. The officers beat Plaintiff with a baton, dragged across the ground through glass and debris, and verbally threatened him "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. "*Tennessee v. Garner,* 471, US.,11(1985). Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Again, Defendants' unwavering reliance on the selectively produced BWC footage to support their motion for summary judgment is disingenuous and inappropriate. Thus, Defendants' request should be denied.

## V. *The Individual Defendants Are Not Entitled to Qualified Immunity on Plaintiff's §1983 Claims*

When analyzing the defense of qualified immunity, Courts apply the two-step process enumerated in *Saucier v. Katz*, 533 U.S. 194(2001). Although the Court in *Pearson v. Callahan*, 555 U.S. 223 (2009) gave courts deference as to the order of the application of the two-step process, courts are to consider (1) whether facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the police officers' actions violated a constitutional right; and (2) if a plaintiff has established that a constitutional right has been violated, the courts must determine

whether the right at issue was "clearly established" at the time of the officer's conduct. *Id at 201*. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. "*Saucier, 533 U.S. at 202*. The second prong is "a test that focuses on the objective legal reasonableness of an official's acts. "*Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*. Yet, in resolving qualified immunity questions, courts inquire "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation"); *Harlow, 457 U.S. at 818*. The qualified immunity" determination 'is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances.' *Owens v. Lott*, 372 *F.3d 267, 279 (4th Cir. 2004)* (quoting *Wilson v. Kittoe, 337 F.3d 392, 402 (4th Cir. 2003)*. We also have stated in forthright terms "officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." *Bailey v. Kennedy*, 349 F.3d 731, 744-45 (4th Cir. 2003) (quoting *Jones v. Buchanan*, 325 F.3d 520, 531-32 (4th Cir. 2003).

Clearly the Defendants are not entitled to a qualified privilege/immunity as to the force used to effect his arrest because the force used was not justified and it was not reasonable. The defendants qualified privilege ceased once the officers

crossed the threshold of being reasonable and entered the turf of being excessive and unreasonable. Defendants' reliance on *Johnson v. Jackson, 178 A. 2d 327, 328 (D.C. 1962)* is incongruent with the tortious actions used to effect the arrest of plaintiff. Thus, defendants are not entitled to qualified immunity and the Court should deny defendants request for summary judgment.

VI.    *The Court Shouldn't Dismiss or Grant Summary Judgment on Plaintiff's §1983 Municipality Claim*

Although Plaintiff believes that he has adequately plead the necessary elements to support Count #III, should the Court deem the pleading deficient, Plaintiff seeks leave to amend this Count of Plaintiff's Complaint. Granting defendant's motion to strike plaintiff's initial complaint without granting plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendments. *Verizon Del., Inc. v. Covad Communs. Co.,* 377 F.3d 1081, 2004 U.S. App. LEXIS 15453 (9th Cir. 2004). Where facts sufficient to support claim were not alleged in complaint, district court should have allowed plaintiff opportunity to amend complaint, rather than dismissing claim. *Sanford v. Motts*, 258 F.3d 1117, 2001 Cal. Daily Op. Service 6438, 2001 D.A.R. 7933, 2001 U.S. App. LEXIS 17028 (9th Cir. 2001).

VII.    *Plaintiff Complied with D.C. §12-309 and The Court Should Deny Defendants' Request for Judgment on all Common Law Claims*

D.C. Code 12-309(a) states:

"a) Except as provided in subsection (b) of this section, an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause,

and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."

Plaintiff satisfied the requirements of D.C. Code 12-309 when he filed his notice of claim on January 25, 2021(Ex. 3). Defendants overlooked the Superior Court of the District of Columbia's Order Amended 1/13/21. In this Order, the Court states:

> "By Orders issued March 18, 2020, March 19, 2020, May 14, 2020, June 19, 2020, August 13, 2020, and November 5, 2020, the Chief Judge ordered that (except as otherwise specified) all deadlines and time limits in statutes, court rules, and standing and other orders issued by the Court that would otherwise expire before June 19, 2020, including statutes of limitations, are suspended, tolled, and extended during the period of the current judicial emergency. As indicated in that order, the deadlines and time limits may be further suspended, tolled, and extended as circumstances change. Suspension, tolling, and extension will continue to the extent specified in this Order until at least March 31, 2021. The Court will provide at least 60 days' notice before ending all suspension, tolling, and extension of deadlines." (Ex. 4).

Hence, Plaintiff's Notice of Claim was timely.

Concomitant to Plaintiff's notice of claim- a police report is an alternative form of notice added under statute requiring notice to District of Columbia in order to recover in suit against District to take care of those instances in which actual notice is had by the District from the police department, although technical notice may not have been filed by the person injured. *Mazloum v. D.C. Metro. Police Dep't*, 522 F. Supp. 2d 24, 2007 U.S. Dist. LEXIS 81793 (D.D.C. 2007). For purpose of statute governing notice to mayor of possible litigation against the District of Columbia, police report provides sufficient notice of "cause" of injuries to satisfy the statutory requirement if it recites facts from which it could be reasonably anticipated that claim against that District might arise. D.C. Code § 12-309. *Pitts v.*

*District of Columbia*, 391 A.2d 803, 1978 D.C. App. LEXIS 306 (D.C. 1978). Whether particular police report or series of reports constitutes statutory notice to the District of Columbia under provision governing notice to mayor of possible litigation against the District can only be reached after consideration of particular facts of the case, nature of report itself and objective sought to be attained by the notice provision. D.C. Code § 12-309. *Id*.

Here, the affidavit of charges specifies the time, place, cause and circumstances and damages plaintiff sustained as result the incident with Defendants. (Ex. 1) Plaintiff was taken to taken to hospital. (Ex.1 and ECF 11-2: BWC) The District was well aware of the fact its police practices would be under scrutiny given the climate of social justice against excessive force by police officers. Especially given that the protests which brought Plaintiff to the District of Columbia were a direct response to the tragic death of George Floyd at the hands of Minneapolis, MN police officer Derek Chauvin. BWC footage shows officers hitting plaintiff with a baton, throwing plaintiff to the ground and dragging Plaintiff across H street that evening. (See BWC video at 0:2:39) Officer O'Shea exclaims in the BWC that Plaintiff may need to go to the hospital. (BWC video at 0:3:39) Defendant officers then carefully craft allegations that Plaintiff committed assault on the officers- when the BWC video shows otherwise. The District new or should've known that a  legal action would be pending considering the false affidavit of charges, the BWC video, and subsequent dismissal of all charges against Plaintiff. Having satisfied the requirement and exception to §12-309, Defendant officers should be denied judgment on all common law claims.

VIII. *Defendants are not Entitled to Qualified Privilege on the Battery Claim.*

Here again, defendants attempt to color their actions as reasonable based upon the one BWC video. At a minimum, the BWC footage is subject to a diverse array of interpretations and opinions for a trier of fact. Whether the officers conduct was objectively reasonable requires discovery of all BWC videos, depositions of officers, witnesses and expert testimony. Although issue of whether defendant is entitled to qualified immunity is pure question of law to be decided by court, pretrial resolution of qualified immunity defense may be thwarted by factual dispute; thus, legitimate and material factual disputes about what officer actually did will prevent court from determining whether they are entitled to qualified immunity. *Smith v. Lanier*, 779 F. Supp. 2d 79, 2011 U.S. Dist. LEXIS 45131 (D.D.C. 2011), aff'd, 726 F.3d 166, 406 U.S. App. D.C. 398, 2013 U.S. App. LEXIS 16276 (D.C. Cir. 2013).

Defendants overzealously seek summary judgment when not all of the relevant facts are available without discovery to present to this Court. The Court should deny Defendants' request for judgment.

IX. *Plaintiff's Claim for Malicious Prosecution Should Survive Summary Judgment*

The issue in a malicious prosecution case is not whether there was probable cause for the initial arrest, but whether there was probable cause for the underlying suit." *Pitt v. District of Columbia*, 491 F.3d 494, 502, 377 U.S. App. D.C. 103 (D.C. Cir. 2007); *Dellums v. Powell* (*Dellums II*), 566 F.2d 216, 220, 184 U.S. App. D.C. 324 (D.C. Cir. 1977) (noting that in the criminal context, "the critical event

triggering liability for malicious prosecution is the filing of an information"). Nevertheless, a malicious prosecution claim is sustained where the proceeding is "induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Moore v. Hartman*, 571 F.3d 62, 67, 387 U.S. App. D.C. 62 (D.C. Cir. 2009); *Dellums v. Powell* (*Dellums I*), 566 F.2d 167, 192, 184 U.S. App. D.C. 275 (D.C. Cir. 1977); *Melvin*, 130 F.2d at 428.

Contrary to Defendants' assertion, The District of Columbia lacked probable cause to prosecute Plaintiff for burglary. Again, by Defendant Officer O'Shea's admission in the affidavit of charges, no stolen merchandise was recovered from Plaintiff. (Ex.1) Defendant Officers were in control of the alleged crime scene and could've recovered the "stolen" items- that is- if they existed. Instead, the Defendant officers overcharged the Plaintiff in an attempt to cover their wrongful arrest and malicious prosecution. A trier of fact may conclude that the burglary charge was dismissed in Plaintiff's favor because Defendants had no evidence to support the statutory definition of burglary. However, further discovery will be needed to grasp the complete rationale for the Assistant US Attorney dismissing the charges. Therefore, Plaintiff's malicious prosecution claim should proceed forward.

X. *The Court Should Deny Defendant's Request for Summary Judgment on Plaintiffs Claims for Intentional Infliction of Emotional Distress*

To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress. *Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C. 1984) (quoting *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982)) *Larijani v. Georgetown Univ.,* 791 A.2d 41, 44 (D.C. 2002).

In this case, Defendants advances its argument based upon a viewing of one officer's BWC footage. Taking a closer look and listen to the video we see and hear;(1) exploding tear gas bombs;(2) smoke from tear gas; (3) sounds of rubber being fired; all coming from law enforcement.  The video also shows the officers; (1) throwing Plaintiff to the ground;(2) hitting a helpless Plaintiff with a baton;(3) plaintiff pleas for help;(4) an officer threatening to hurt plaintiff while changing the position of the handcuffs. (See BWC @0:5:19) A reasonable jury may have a different opinion of what is sees on the video. Further, there may be other BWC footage from other MPD officers that can only be obtained through discovery. Thus, the Court should deny judgment in favor of Defendants as to Plaintiff's IIED claim (Count VII).

XI.     *Plaintiff's Complaint for Negligence Must Not be Dismissed.*

To prove a negligence claim, a plaintiff must establish "(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1038 (D.C. 2014).  However, Plaintiff is not obligated to prove his claim for negligence in his complaint. With few exceptions, plaintiffs in federal actions need not plead facts and may plead conclusions, and federal courts are not to interpolate requirement of fact pleading into federal rules; therefore, complaint in case at bar should not have been dismissed for failure to allege grounds for its liability in sufficient detail. *Jackson v. Marion County*, 66 F.3d 151, 33 Fed. R. Serv. 3d (Callaghan) 569, 1995 U.S. App. LEXIS 26705 (7th Cir. 1995).

Defendants' professional conduct in the incident sequence when Plaintiff was detained immediately after existing the Walgreen broken window markedly *breaches* the duty of professionalism expected from a member of the police department of the nation's capital. Defendants did not hold up to the *ordinary standard of care* expected of "the nation's finest!" Defendant's BWC captured a series of missteps by Defendants that reflects a deficient in police training, professional incompetency or simply a disregard for the life and safety of plaintiff. By way of example of Defendant's negligence, Plaintiff pleads properly the Defendant officers are seen dragging plaintiff across a glass strewn street causing lacerations to Plaintiff's body. (BWC @ 0:2:39 and ECF1). Said BWC provides sufficient evidence that Defendants' conduct was negligent and is distinguishable from simply using terms such as " *carelessly and negligently"* to support Plaintiff's cause of action.

Therefore, Defendants' request to dismiss the negligence count should be denied.

XII. *Plaintiff's Negligence Count IX against the Metropolitan Police Department Should Not Be Dismissed.*

Plaintiff is required to include in complaint only short and plain statement of claim that will give defendant fair notice of what plaintiff's claim is and grounds upon which it rests, and plaintiff need not set out in detail facts upon which claim is based. *Yamaguchi v. United States Dep't of the Air Force*, 109 F.3d 1475, 97 Cal. Daily Op. Service 2446, 97 D.A.R. 4371, 70 Empl. Prac. Dec. (CCH) ¶ 44661, 73 Fair Empl. Prac. Cas. (BNA) 884, 37 Fed. R. Serv. 3d (Callaghan) 107, 1997 U.S. App.

LEXIS 6094 (9th Cir. 1997). Plaintiff's Count IX alleges with all available facts about the District's actual and constructive knowledge of the dangerous and otherwise incompetent behavior of its officers. Hence, Plaintiff's claim for Count IX should not be dismissed.

XIII. *In Lieu of the Alternative, Should This Court Deem any of Plaintiff's Counts and Claims Legally and/or Factual Insufficient, Plaintiff Requests Leave to Amend his Complaint*

Plaintiff believes that he has plead adequately his claims and requests for relief through his Complaint. However, should this Court deem any of Plaintiff's claims or requests for relief deficient, Plaintiff requests leave from the Court, pursuant to Fed. Rule Civ. Proc. 15, to amend his complaint.

CONCLUSION

Wherefore Plaintiff requests this Court:

A. Deny Defendants' Motion to Dismiss and Motion for Summary Judgment.

B. Grant Plaintiff Leave to Amend his Complaint.

C. Grant Plaintiff additional time to serve Defendants the amended complaint and summons.

D. Grant Plaintiff any additional relief this Court deems just and proper.

Dated: December 29, 2021.

Respectfully submitted,

**THE INGRAM FIRM, LLC**

*/s/Damani K. Ingram*
Damani K. Ingram, Esq.
Bar No:MD26320
5457 Twin Knolls Road
Suite 301
Columbia, MD 21045
Phone:(410) 992-6603
Fax:(410) 992-6671
e-mail: dkingram@ingfirm.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of December 2021, that a copy of the foregoing Memorandum in Opposition to Defendants' Motion to Dismiss or in Lieu of Alternative Motion for Summary Judgment and Memorandum in Support of Amending Complaint was served via CM/ECF System to the following counsel(s) of record: Philip A. Medley, Esq.- philip.medley@dc.gov, Matthew Trout Matthew.trout1@dc.gov.

*/s/Damani K. Ingram*
Damani K. Ingram, Esq.