UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRELL D. SINGLETON,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants*. | Case No. 1:21-cv-01914-RJL |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

In his Opposition to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment, Plaintiff Tyrell Singleton argues primarily that the Court should deny the motion at this time because "[s]ummary judgment 'ordinarily is proper only after the plaintiff has been given adequate time for discovery.'" Pl.'s Mem. of P. & A. [14-1] at 7 (quoting *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997). But when there is undisputed video footage of the events in question, the Court must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

Plaintiff cites *Strang v. U.S. Arms Control & Disarmament Agency* for the proposition that "a court 'may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion.'" Pl.'s Mem. of P. & A. [14-1] at 7 (quoting *Strang,* 864 F.2d 859, 861 (D.C. Cir. 1989)). But just like the claimant in *Strang*, Plaintiff fails to "state with sufficient particularity . . . why discovery [i]s necessary." 864 F.2d at 861. Plaintiff argues that Defendants rely on "selectively produced [body-worn camera

(BWC)] footage"—Pl.'s Mem. of P. & A. [14-1] at 12—and that "[w]hether the officers [sic] conduct was objectively reasonable requires discovery of all BWC videos, depositions of officers, witnesses and expert testimony"—*id.* [14-1] at 17. But what material fact is Plaintiff suggesting this discovery will reveal? What key aspect of Plaintiff's arrest is not depicted in the BWC footage attached to Defendants' motion? Plaintiff does not say.[1] Instead, he asks this Court to take a leap of faith by allowing him to proceed to discovery in the hopes that he might manufacture some unknown dispute of material fact. The Rules of Civil Procedure do not allow such gamesmanship. *Aschroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (noting that the Rules "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The Court should dismiss or grant judgment to Defendants on all of Plaintiff's claims because (1) Plaintiff has failed to establish a genuine issue of material fact as to any claim, and (2) Plaintiff did not adequately address the arguments raised in Defendants' motion.

I. **Reply to Plaintiff's Statement of Material Facts in Dispute**

Plaintiff does not directly admit or deny the individually enumerated facts in Defendants' Statement of Material Facts; instead, he issues his own Statement of Material Facts in Dispute. *See* Pl.'s Mem. of P. & A. [14-1] at 3-5. As Defendants explain in the attached chart, Plaintiff alleges no genuine dispute of material fact. *See* Attach. A.

---

[1] Plaintiff asserts that "in the BWC video at 05:18, there is a gentleman sitting on the curb next to Plaintiff. This gentleman is also detained by police." Pl.'s Mem. of P. & A. [14-1] at 2. Plaintiff makes no claim as to what material fact this witness might contribute to the record. It is safe for this Court to presume that he would offer nothing more than a second-hand account of the events that are plainly viewable in the BWC footage.

## II. Plaintiff Fails to Counter Defendants' Arguments.

### A. Plaintiff Did Not Oppose—and Thus Conceded—Defendants' Arguments that (1) the Court Should Dismiss Defendant Newsham Entirely, and (2) the Court Should Dismiss Plaintiff's First Amendment Retaliation Claim (Count I).

In his Opposition, Plaintiff failed to respond to two of Defendants' arguments: (1) that the Complaint includes no factual allegations about Defendant Newsham and thus the Court should dismiss him from this matter entirely; and (2) that the Complaint fails to state a claim for First Amendment Retaliation. *See* Defs.' Mem. of P. & A. [11] at 14, 19-20; Pl.'s Mem. of P. & A. [14-1], *passim*. Thus, the Court should treat these arguments as conceded and dismiss Defendant Newsham and Count I. *See* LCvR 7(b).

### B. Defendants Sotelo and O'Shea Did Not Waive Service.

Plaintiff argues that by filing their motion to dismiss or in the alternative motion for summary judgment, Defendants Sotelo and O'Shea waived service. Pl.'s Mem. of P. & A. [14-1] at 8-9. In support, he relies on *McPhearson v. Anderson*, a case from the Eastern District of Virginia. *Id*. But *McPhearson* hinges on a specific point of Virginia law about the difference between "general" and "special" appearances. *See McPhearson v. Anderson*, 874 F. Supp. 2d 573, 578 (E.D. Va. 2012) ("Although Federal Rule of Civil Procedure 12(b) abolished the distinction between special appearances and general appearances in federal court, such distinction lives on in Virginia law."). Thus, it is unavailing.

Defendants Sotelo and O'Shea raised the defense of insufficient process at exactly the appropriate time—indeed, Rule 12(h)(1) dictates that they would have waived this defense had they not made it in their motion to dismiss (or in some other responsive pleading). Fed. R. Civ. P. 12(h)(1). The Circuit Court of Appeals has held that "'when a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the

adjudication of claims arising from the same subject matter[,]'" *Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012) (quoting *PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 460-61 (5th Cir. 2001)), but Defendants Sotelo and O'Shea have sought no such affirmative relief prior to filing their Motion to Dismiss. *See e.g. Raynor v. District of Columbia*, 296 F.Supp.3d 66, 71 (D.D.C. 2017) (stating that "notices of appearance, status reports and other notices, and a motion to stay the proceedings" did not constitute the kind of affirmative relief that would have the effect of waiving service).

Plaintiff argues that because Defendants Sotelo and O'Shea sought summary judgment in the alternative of dismissal, they waived service. Pl.'s Mem. of P. & A. [14-1] at 8. Plaintiff cites no authority supporting this position. *Id.* Still, Defendants sought the alternative relief of summary judgment in the interests of judicial efficiency and economy: had they moved to dismiss solely on the grounds of insufficient process and had the Court denied such a motion, then they ultimately would have filed a subsequent motion for summary judgment. Moreover, the District—which was properly served—was already planning to file a motion to dismiss or in the alternative motion for summary judgment. Thus, it would have been procedurally myopic for Defendants Sotelo and O'Shea not to join such a motion.

Because Defendants Sotelo and O'Shea have not been served and have not waived service, the Court should dismiss them entirely.

C. **Plaintiff's Claims for Battery (Count IV), False Arrest (Count V), and Intentional Infliction of Emotional Distress (Count VII) Are Time-barred.**

Plaintiff does not contest that his Complaint was filed on July 15, 2021, or that his claims for battery, false arrest, and intentional infliction of emotional distress (IIED) stemming from the May 31, 2020 incident are subject to a one-year statute of limitations. *See* Pl.'s Mem. of P. & A. [14-1] at 9. Instead, Plaintiff argues that the Chief Judge of the Superior Court of the District of

Columbia tolled the statute of limitations on these claims through July 15, 2021 through emergency orders. *Id.* But this is not so. The Chief Judge of the Superior Court has authority in an emergency to "enter such order or orders as may be appropriate to delay, toll, or otherwise grant relief from the time deadlines imposed by otherwise applicable laws or rules for such period as may be appropriate *for any class of cases pending or thereafter filed in the Superior Court.*" D.C. Code § 11-947(a)(2)(A) (emphasis added). Because Plaintiff's claims were neither pending nor filed in the Superior Court, the tolling does not apply, and Plaintiff's claims are thus untimely.[2]

> **D.     Plaintiff Fails to Show That the Officers Lacked Probable Cause to Stop and Arrest Plaintiff for Second Degree Burglary.**

In arguing that the officers did not have probable cause to stop and arrest Plaintiff for second degree burglary, Plaintiff focuses on the fact that the officers did not recover merchandise from the Walgreens in the course of arresting Plaintiff. Pl.'s Mem. of P. & A. [14-1] at 9-10. Plaintiff is essentially arguing his innocence as to the accused crime. But this is not his criminal matter. Probable cause analysis concerns whether it was *reasonable* for the officers to conclude that the suspect committed a crime—*see United States v. Hewlett*, 360 F. Supp. 2d 21, 23 (D.D.C. 2003)—not whether the totality of the evidence gathered suggests that the government ultimately might not be able to prove the suspect's guilt beyond a reasonable doubt. The BWC footage incontrovertibly shows that Plaintiff was carrying items in a garbage bag as he ran out of the Walgreens. *See* Defs.' Statement of Material Facts As To Which There Is No Genuine Issue

---

[2]     Like the Superior Court, the Chief Judge of this jurisdiction has issued various orders addressing the COVID-19 pandemic's effects on court operations. However, these orders are either silent on the issue of tolling or explicitly state that any statutes of limitations are unaffected. *See, e.g.*, COVID-19 Standing Order 20-62 ¶ 7 (Howell, C.J., July 9, 2020) ("This Order does not toll any applicable statute of limitations."). Thus, this Court's orders are of no help to Plaintiff.

(SMF) [11] at ¶¶ 3.f-3.g. At that point, the officers had probable cause to arrest Plaintiff for second degree burglary, and the contention that the officers were later unable to locate the items Plaintiff was carrying is irrelevant to the analysis.

Plaintiff goes on to argue that the Court should not grant summary judgment on this point because he "seek[s] discovery of potentially favorable information." Pl.'s Mem. of P. & A. [14-1] at 10. But Plaintiff fails to set forth what information—material to the probable cause analysis and not captured in the BWC footage—he seeks. Nor could he; the BWC footage is sufficient to establish that the officers had probable cause to arrest Plaintiff.

Because Plaintiff fails to show that the officers lacked probable cause, the Court should grant judgment as to all claims premised on false arrest.

### E. **Plaintiff Fails to Show That the Force Used by the Officers Was Objectively Unreasonable.**

Plaintiff's response to Defendants' argument that the force used to detain Plaintiff was objectively reasonable reads more like a cross-motion for summary judgment than an opposition—he argues that the BWC footage shows that the force used was objectively *unreasonable*. *Id.* [14-1] at 12. Plaintiff claims that the officers used force against him while he "was subdued, on the ground and crying for help."[3] *Id.* The Court must disregard this characterization, as it is completely contradicted by the BWC footage. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

---

[3]     Plaintiff also makes the startling claim that Defendants "disingenuous[ly] and inappropriate[ly]" rely on "selectively produced BWC footage[.]" Pl.'s Mem. of P. & A. [14-1] at 12. Setting aside the fact that Plaintiff simultaneously argues that the supposedly incomplete BWC footage vindicates *him*, Plaintiff's argument fails for the fact that he does not identify what, if any, key portion of the incident is not contained in the BWC footage.

6

facts for purposes of ruling on a motion for summary judgment"). Instead, the BWC footage shows Plaintiff fleeing the Walgreens through an open window, where he encounters officers, who immediately attempt to detain him. Defs.' Mem. of P. & A. [11] at 19. The video then shows Plaintiff flailing his body for about a minute, while he ignores the officers' commands to stop resisting. *Id.* The officers use an appropriate amount of force necessary to handcuff Plaintiff, and then they stop using force. *Id.*

Because Plaintiff fails to show that the force used was objectively unreasonable, the Court should grant judgment as to all claims premised on excessive force.

### F. <u>Plaintiff Fails to Show That the Officers Are Not Entitled to Qualified Immunity.</u>

In arguing that the officers are not entitled to qualified immunity, Plaintiff relies on the conclusory position that "the force used was not justified and it was not reasonable."[4] Pl.'s Mem. of P. & A. [14-1] at 13. The Supreme Court recently reiterated that to overcome qualified immunity, the "clearly established constitutional right" at issue must be *specifically* defined:

> We have repeatedly told courts not to define clearly established law at too high a level of generality. It is not enough that a rule be suggested by then-existing precedent; the "rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9, 11 (2021) (citations omitted) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). In that vein, Plaintiff fails to cite any authority—with facts similar enough to the present matter—indicating that it should have been clear to the officers in this case that their conduct was unlawful. Thus, the officer are entitled to qualified immunity.

---

[4] Plaintiff does not seem to argue that his arrest was unreasonable, apparently conceding that portion of the qualified immunity argument. *See* Pl.'s Mem. of P. & A. [14-1] at 12-14.

### G. **Plaintiff Fails to Establish a § 1983 Municipal Liability Claim (Count III).**

Plaintiff does not engage the District's specific arguments as to his § 1983 municipal liability claim. *See* Pl.'s Mem. of P. & A. [14-1] at 14. Instead, he simply states that he "believes that he has adequately plead the necessary elements to support" the claim but asks for leave to amend his Complaint should the Court decide that his pleading is lacking. *Id*. Plaintiff cannot have it both ways. He does not—even in a cursory way—identify what facts he would add to the Complaint to state a claim for § 1983 municipal liability, nor does he point to what facts he has currently set forth that would establish municipal liability. *See id.* The Court should dismiss or grant judgment as to Plaintiff's § 1983 municipal liability claim (Count III).

### H. **Plaintiff Fails to Show That He Complied with D.C. Code § 12-309.**

As the District anticipated in its motion, Plaintiff argues that the police report generated because of his arrest satisfied the notice requirement of D.C. Code § 12-309. *Id*. [14-1] at 15-16. As explained in Defendants' motion, the Court of Appeals has made clear that the average arrest report does not satisfy § 12-309, and Plaintiff fails to distinguish the present matter from the slew of cases upholding that principle. *Compare* Defs.' Mem. of P. & A. [11] at 25-26 *with* Pl.'s Mem. of P. & A. [14-1] at 15-16. A police report only satisfies § 12-309 "if it recites facts from which it could be reasonably anticipated that a claim against the District might arise," meaning that the report must "disclose both the factual cause of the injury *and a reasonable basis for anticipating legal action as a consequence*." *Washington v. District of Columbia*, 429 A.2d 1362, 1366 (D.C. 1981) (emphasis added). The arrest report in this case contains no information from which the District could reasonably have anticipated legal action.

Plaintiff also argues that "[t]he District was well aware of the fact its police practices would be under scrutiny given the climate of social justice against excessive force by police

officers." Pl.'s Mem. of P. & A. [14-1] at 16. Plaintiff cites no authority—and there is none—indicating that news events or public policy discussions could somehow satisfy the notice requirement of § 12-309.

Finally, Plaintiff argues that his § 12-309 deadline was tolled by the Emergency Orders of the Superior Court of the District of Columbia. *Id*. [14-1] at 14-15. But for the reasons stated Sec. II.C *supra*, this argument is unavailing.

### I. **Plaintiff Fails to Show That the Officers Are Not Entitled to Qualified Privilege.**

Plaintiff claims that the officers are not entitled to qualified privilege as to his battery claim because "the BWC footage is subject to a diverse array of interpretations and opinions for a trier of fact[]" and "[w]hether the officers [sic] conduct was objectively reasonable requires discovery of all BWC videos." Pl.'s Mem. of P. & A. [14-1] at 17. But as he does throughout his Opposition, Plaintiff does not take the necessary next step of explaining *what* other reasonable interpretations could be drawn from the BWC footage attached to Defendants' motion or *why* the Court needs to see "all BWC videos." Plaintiff is essentially arguing that he cannot allege a dispute of material fact at this time but that the Court should allow him to proceed to discovery so that he can try to find one. The Court should not permit this and should grant Defendants' motion on this count.

### J. **Plaintiff Fails to Establish a Claim for Malicious Prosecution (Count VI).**

In support of his malicious prosecution claim, Plaintiff argues that there was no probable cause to prosecute him for second degree burglary, and he appears to suggest that probable cause to prosecute dissipated once the officers did not recover the items that Plaintiff was holding as he ran out of Walgreens. Pl.'s Mem. of P. & A. [14-1] at 18. Plaintiff fails to cite any authority supporting this position, and for the reasons stated in Defendants' Motion and Sec. II.D, *supra*,

9

probable cause to arrest and prosecute Plaintiff for second degree burglary existed. *See* Defs.' Mem. of P. & A. [11] at 27. Additionally, Plaintiff claims that he needs discovery "to grasp the complete rationale for the Assistant US Attorney dismissing the charges." Pl.'s Mem. of P. & A. [14-1] at 18. But as Defendants show in their Motion, Plaintiff has failed to meet the basic threshold of pleading a viable claim for malicious prosecution. *See* Defs.' Mem. of P. & A. [11] at 27.

### K. **Plaintiff Fails to Establish a Claim for IIED (Count VII).**

Plaintiff's only argument in support of his IIED claim relies on an outright false description of the BWC footage. *See* Pl.'s Mem. of P. & A. [14-1] at 19 (claiming that the BWC footage depicts "exploding tear gas bombs;" "smoke from tear gas;" sounds of rubber being fired; all coming from law enforcement[;]" as well as "the officers . . . throwing Plaintiff to the ground; . . . hitting a helpless Plaintiff with a baton; . . . [P]laintiff pleas for help; . . . [and] an officer threatening to hurt [P]laintiff while changing the position of the handcuffs."). The Court should disregard all of Plaintiff's characterizations that are contradicted by the BWC footage. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

The footage does not show the extreme and outrageous conduct necessary to sustain a claim of intentional infliction of emotional distress, and this count should be dismissed. *See, e.g.*, *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (intentional infliction of emotional distress occurs "only when the conduct goes beyond all possible bound of decency and [is] regarded as atrocious and utterly intolerable in a civilized community"); *Cooke-Seals v. District*

*of Columbia*, 973 F. Supp. 184, 186 *D.D.C. 1997) (the "very demanding standard" to establish intentional infliction of emotional distress "is infrequently met").

### L. Plaintiff Fails to Establish a Claim for Negligence (Count VIII).

Plaintiff fails to respond to Defendants' argument that he is impermissibly attempting to premise his negligence claim on intentional conduct. *See id.* [14-1] at 19-20. In fact, he doubles down on the notion that he is only complaining about intentional conduct by arguing that the officers were negligent when they intentionally pulled Plaintiff away from the sidewalk in order to process him for arrest. *Id.* [14-1] at 20. For the reasons stated in Defendants' Motion, Plaintiff cannot base a negligence claim on such allegations. Defs.' Mem. of P. & A. [11] at 29.

### M. Plaintiff Fails to Establish a Claim for Negligent Training and Supervision (Count IX).

Plaintiff does not respond directly to Defendants' arguments concerning his failure to state a claim for negligent training and supervision. Instead, he argues merely that he "need not set out in detail facts upon which [his] claim is based." *Id.* [14-1] at 20. In asserting this proposition, he applies an extinct standard, relying on a Ninth Circuit ruling that is based on the now-abrogated pleading standard laid out in *Conley v. Gibson*. *See id.* (citing *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997)). But more importantly—as Defendants show in their Motion—the issue is not that Plaintiff failed to provide enough *detailed* facts in his Complaint; it's that Plaintiff alleged *no facts at all* that would state a claim for negligent training and supervision. *See* Defs.' Mem. of P. & A. [11] at 29-30. Plaintiff has failed to satisfy the pleading standard, and this count should therefore be dismissed.

### CONCLUSION

For the foregoing reasons, along with those in Defendants' Motion, the Court should dismiss or grant judgment for Defendants on all of Plaintiff's claims.

| | |
|---|---|
| Date: January 19, 2022 | Respectfully submitted<br><br>KARL A. RACINE<br>Attorney General for the District of Columbia<br><br>CHAD COPELAND<br>Deputy Attorney General<br>Civil Litigation Division<br><br>*/s/ Stephanie E. Litos*<br>STEPHANIE E. LITOS [483164]<br>Assistant Deputy Attorney General<br>Civil Litigation Division<br><br>*/s/ Philip A. Medley*<br>PHILIP A. MEDLEY [1010307]<br>MATTHEW TROUT [1030119]<br>Assistant Attorneys General<br>400 6th Street, N.W.<br>Washington, D.C. 20001<br>(202) 724-6626 / (202) 724-5695 (office)<br>(202) 664-4791 (cell)<br>(202) 741-5920 / (202) 724-6590 (fax)<br>philip.medley@dc.gov /<br>matthew.trout1@dc.gov<br><br>*Counsel for Defendants District of Columbia, Peter Newsham, Brian O'Shea, and Adam Sotelo* |