UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TYRELL DIVONNE SINGLETON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 21-1914 (RJL)** |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION
(September _14_, 2022) [Dkt. #11]

Following his arrest by District of Columbia police officers, plaintiff Tyrell Singleton ("plaintiff" or "Singleton") filed suit against the District of Columbia ("D.C."), the Chief of Police, two individual defendants (Sergeant Sotelo and Officer O'Shea), and other unnamed Metropolitan Police Department ("MPD") officers (collectively, "defendants"). *See* Complaint ("Compl.") [Dkt. #1]. Plaintiff raises an assortment of constitutional, statutory, and common law claims alleging, in general, that defendants violated his First and Fourth Amendment rights and assaulted and battered him. Defendants now move to dismiss or, in the alternative, for summary judgment, for a variety of reasons, including failure to state a claim, failure to serve, and qualified immunity. *See* Defs.' Memo. in Support of Mot. to Dismiss ("MTD") [Dkt. #11].

Because each of plaintiff's claims fails for at least one of the reasons identified by defendants, the Motion to Dismiss is hereby GRANTED.

1

## BACKGROUND

### A. Factual Background

Plaintiff alleges that he "attend[ed] a protest in Washington, D.C." in May 2020 "following the arrest and murder of George Floyd on May 25, 2020." Compl. ¶ 11.  He claims that, after he "sought cover inside … Walgreens" on 7th Street NW after MPD officers sprayed tear gas, Officer O'Shea, Sergeant Sotelo, and other unnamed MPD officers "forcibly removed" him from Walgreens and "dragged [him] through mounds of broken glass, hit him repeatedly with a baton, destroyed his phone and pinned him to the pavement after being put in handcuffs." *Id.* ¶ 13–14.  He further alleges that, despite his "pleas, assurances, proof and evidence that he was peaceably protesting and was not committing any crimes," defendants "assaulted and battered" him.  *Id.* ¶ 15.  Officer O'Shea filed criminal charges against Singleton, alleging "Burglary II, Simple Assault and Resisting Arrest."  *Id.* ¶ 16.  On February 9, 2021, the District filed a Notice of Nolle Prosequi and dismissed the charges.  *Id.* ¶ 17.

Defendants reject plaintiff's account of the facts and submit body-worn camera ("BWC") footage from Officer O'Shea, *see* Exhibit 2, Defs.' Mot. to Dismiss ("BWC") [Dkt. #11-2], to support their account.  According to defendants, MPD officers "responded to a radio bulletin about active looting taking place at the Walgreens" on 7th Street NW. MTD at 2.  The footage shows Officer O'Shea approaching the Walgreens, with "no sign that chemical irritants have been deployed in the vicinity."  *Id.*  Officer O'Shea enters the Walgreens through a broken window, which left broken glass on the sidewalk and inside Walgreens.  *Id.*  He encounters plaintiff, who "was carrying a garbage bag containing

items" and "then slid[] legs-first through glass shards towards one of the broken windows." *Id.* at 2–3. Through the broken window, plaintiff "encounters officers on the sidewalk, and a struggle ensues." *Id.* at 3. Plaintiff "continues to resist" as the officers "try to detain" him. *Id.* "The officers are finally able to secure [p]laintiff in handcuffs," and then "pull [him] over to an area near some MPD motorcycles." *Id.* Officer O'Shea calls for a transport, and the officers eventually take plaintiff over to a curb to sit up and to re-handcuff his hands behind his back. *Id.* "Plaintiff was arrested and charged with assault on a police officer, second degree burglary, resisting arrest, and felony violation of the Riot Act," and "was prosecuted for second degree burglary and assault on a police officer." *Id.* The Superior Court dismissed the matter after a Notice of Nolle Prosequi by the U.S. Attorney's Office. *Id.*

**B. Procedural Background**

On July 15, 2021, plaintiff filed his Complaint alleging nine counts: (1) violation of the First Amendment against D.C., Officer O'Shea, Sergeant Sotelo, and unnamed officers; (2) violation of the Fourth Amendment against Officer O'Shea, Sergeant Sotelo, and unnamed officers; (3) a *Monell* claim for municipal liability under § 1983 against D.C. and MPD; (4) battery against Officer O'Shea, Sergeant Sotelo, and unnamed officers; (5) false arrest and illegal imprisonment against Officer O'Shea, Sergeant Sotelo, and unnamed officers; (6) malicious prosecution against D.C., Officer O'Shea, and Sergeant Sotelo; (7) intentional infliction of emotional distress ("IIED") against D.C., Officer O'Shea, and Sergeant Sotelo; (8) negligence against Officer O'Shea, Sergeant Sotelo, and unnamed officers; and (9) negligent supervision against MPD. *See* Compl. ¶¶ 29–78.

Defendants moved to dismiss or, in the alternative, for summary judgment. *See* MTD. In support of their motion, defendants submitted the BWC footage, as well as screenshot images from the footage, the police offense report, the Superior Court docket, and the plaintiff's administrative notice to D.C. under D.C. Code § 12–309. *See* Exhibits, Defs. Mot. to Dismiss [Dkts. ##11-3, 11-4, 11-5, 11-6]. Defendants' motion is now ripe.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* When resolving a Rule 12(b)(6) motion to dismiss, the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).

## ANALYSIS

Defendants argue that each of plaintiff's nine claims must be dismissed for a variety of reasons. At a minimum, defendants contend that the Chief of Police, Officer O'Shea, and Sergeant Sotelo should be dismissed because plaintiff failed to serve those defendants. *See* MTD at 7. And, defendants claim, plaintiff's claims of battery, false arrest, and intentional infliction of emotional distress are barred by the statute of limitations. *See* MTD

4

at 8.   Defendants further argue that plaintiff's Complaint fails to state a claim and that defendants are entitled to qualified immunity on plaintiff's claim of excessive force under 42 U.S.C. § 1983.   *See generally* MTD.   Plaintiff disagrees on all counts and, in the alternative, suggests that the Court should provide leave for him to amend his Complaint. *See generally* Pl.'s Opp. to Mot. to Dismiss ("Opp.") [Dkt. #14].   Unfortunately for plaintiff, I agree with defendants that all of plaintiff's claims must be dismissed and decline to grant plaintiff leave to amend.

### A.  Failure to Serve

First, defendants argue that this Court should dismiss the Chief of Police[1], Officer O'Shea, and Sergeant Sotelo from the action because plaintiff failed to serve those defendants.   MTD at 7.

Plaintiff had 90 days from the filing of his Complaint on July 15, 2021 to serve those three defendants.   Fed. R. Civ. Pro. 4(m).   Plaintiff failed to do so by the required deadline, October 13, 2021.   Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time."   In this Circuit, "good cause" is found "when some outside factor …[,] rather than inadvertence or negligence, prevented service."   *Mann v. Castiel,* 681 F.3d 368, 374 (D.C. Cir. 2012) (internal quotation marks and citations omitted).   In his

---

[1] Defendants also argue that the Chief of Police should be dismissed as a defendant because the Complaint fails to make any allegations against him.   *See* MTD at 7.   Plaintiff did not respond to this argument in his Opposition brief.   *See* Opp.   The Court may treat this argument as conceded, *see Wannall v. Honeywell, Inc.,* 775 F.3d 425, 428 (D.C. Cir. 2014) (citing Local Civil Rule 7(b)), and therefore may dismiss the Chief of Police for this reason as well.

response to defendants' motion to dismiss the individual defendants based on failure to serve, plaintiff offers no explanation—let alone good cause—for his failure. *See* Opp. at 8–9. Plaintiff argues only that defendants "waived their right to contest adequate service" by filing their motion for summary judgment "attack[ing] the merits of [p]laintiff's complaint." Opp. at 8. But that position is inconsistent with the requirements of Federal Rule of Civil Procedure 12 and this Court's precedent. *See* Fed. R. Civ. P. 12(b), (g), (h); *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D.D.C. 2004).

Dismissal of the Chief of Police, Officer O'Shea, and Sergeant Sotelo from plaintiff's suit is therefore appropriate. However, I nonetheless must address defendants' other arguments for dismissing each of the claims that plaintiff brought against the Chief of Police, Officer O'Shea, and Sergeant Sotelo because plaintiff also brought those claims against other defendants. Because, as explained below, each claim against the unserved defendants also fails for another reason, it will be efficient to address those claims as to the dismissed defendants regardless of the failure to serve. *See McManus v. District of Columbia*, 530 F. Supp. 2d 46, 68 (D.D.C. 2007) (noting "that the interest of judicial economy is served by reaching the merits of [p]laintiffs' claims against [defendants who were not properly served] at this time, rather than delaying the inevitable by allowing [p]laintiffs to file another lawsuit against those [d]efendants containing the same meritless claims").

### B. Statute of Limitations

Defendants next argue that the statute of limitations bars plaintiff's claims of battery, false arrest, and intentional infliction of emotional distress. *See* MTD at 8.

Under D.C. law, actions for "battery" and "false arrest or false imprisonment" must be brought within one year. *See* D.C. Code § 12-301(4). Although the statute does not explicitly prescribe a limitations period for IIED, D.C. law applies the same one-year bar to an IIED claim that is "intertwined" with other pleaded torts. *See Zhi Chen v. Monk*, 701 F. Supp. 2d 32, 36–37 (D.D.C. 2010) (citing *Saunders v. Nemati*, 580 A.2d 660, 662 (D.C. 1990)). Here, plaintiff's IIED claim is plainly "intertwined" with his battery and false arrest claims. *See* Compl. ¶¶ 66–67. Because the alleged conduct occurred on May 31, 2020 and plaintiff did not file his Complaint until July 15, 2021, these three claims are time-barred.

In response, plaintiff argues that the claims should not be dismissed because the Superior Court for the District of Columbia suspended the statute of limitations due to COVID-19. Opp. at 9. But the Superior Court's order applies only to those cases filed in Superior Court—not federal court. *See* D.C. Code § 11-947(a)(2)(A). Accordingly, plaintiff's claims of battery, false arrest, and IIED must be dismissed.

### C. Failure to State a Claim

Defendants further argue that plaintiff's Complaint fails to state a claim under the First Amendment and for negligence, negligent supervision, malicious prosecution, and municipal liability. I address each of these claims in turn.

**First Amendment.** Plaintiff alleges that defendants "deprived [him] of ... clearly established constitutional rights as enunciated in the First Amendment[.]" Compl. ¶ 30. Defendants move to dismiss this claim, arguing that the claim either (1) is duplicative of the Fourth Amendment excessive force claim, or (2) fails to allege retaliatory animus, a

required element of a First Amendment retaliation claim.  *See* MTD at 12–13.  Because plaintiff did not oppose defendants' argument in his Opposition, he has conceded the argument.  *See* Local Civil Rule 7(b); *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).  The First Amendment claim therefore must be dismissed.

**Negligence.**  Plaintiff alleges that the individual officers were negligent "when they were investigating the protests … and [in] their detention and arrest of" him.  Compl. ¶ 70. Defendants move to dismiss because the negligence claim "appears indistinguishable from his claims premised on false arrest and excessive force" and is "premised on intentional conduct."  MTD at 22.

"[W]hen a negligence claim involves use of excessive force by a police officer, the negligence must be distinctly plead and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care."  *Cotton v. District of Columbia*, 541 F. Supp. 2d 195, 209 (D.D.C. 2008) (citation omitted).  Plaintiff has failed to plead any separate factual scenarios that could give rise to a distinct negligence claim.  *See* Compl. ¶¶ 70, 72; Opp. at 20. Accordingly, plaintiff's claim does not sound in negligence and must be dismissed.  *See,* *e.g.*, *Elshazli v. District of Columbia*, 415 F. Supp. 3d 20, 27 (D.D.C. 2019) (citing *District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003)).

**Negligent Supervision.**  Plaintiff claims that D.C.'s MPD "breached its ordinary standard of care to the African-American communities as well as to Hispanic communities in the proper training and supervision of its police officers."  Compl. ¶ 77.  Defendants move to dismiss this negligent supervision claim because plaintiff fails to allege that D.C.

had "actual or constructive knowledge of dangerous or otherwise incompetent behavior on the part of the individually named officers." MTD at 23.

"In the District of Columbia, a party asserting a claim for negligent supervision or training must allege"—in addition to the standard elements of negligence—"'that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise [or train] the employee.'" *Spiller v. District of Columbia*, 302 F. Supp. 3d 240, 254 (D.D.C. 2018) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)). I agree with defendants that plaintiff's Complaint fails to do so. Plaintiff nowhere alleges that D.C. or MPD had actual or constructive knowledge of "dangerous or incompetent behavior by the officers in question" in the past, nor does he "allege[] any facts that might plausibly show that the District, as a matter of course, failed to discipline or to retrain officers after serious incidents, or that incidents of the type at issue here occurred with such regularity that the District was on notice of some common propensity among MPD officers." *Spiller*, 302 F. Supp. 3d at 255. Accordingly, plaintiff's negligent supervision claim also must be dismissed.

**Malicious Prosecution.** Plaintiff alleges that the individual defendants "maliciously prosecuted him for alleging [sic] committing crime(s) that they knew he had not committed, to justify and/or cover-up their professional misconduct." Compl. ¶ 59. He alleges that Officer O'Shea "willingly and knowingly permitt[ed] such a falsely represented complaint to go forward," "the criminal proceeding was done in the absence of probable cause," and D.C. subsequently "dismissed the charges" through a Notice of

Nolle Prosequi. *Id.* ¶¶ 60–62. Defendants argue that the claim should be dismissed because "the government had probable cause to prosecute [p]laintiff for second degree burglary" and plaintiff "failed to state facts indicating that the underlying suit terminated in his favor." MTD at 20.

To state a claim for malicious prosecution under D.C. law, a plaintiff must allege "(a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.'" *Amobi v. District of Columbia Dep't of Corrections,* 755 F.3d 980, 992 (D.C. Cir. 2014) (quoting *DeWitt v. District of Columbia,* 43 A.3d 291, 296 (D.C. 2012)) (alterations omitted). A favorable determination must "reflect on the merits of the underlying action." *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986). "Merely alleging that criminal charges were dismissed is, accordingly, insufficient to plead that the underlying case was *favorably* terminated." *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 42 (D.D.C. 2015) (emphasis added). As in *Kenley*, plaintiff here "does not allege that the prosecutor gave any reasons—*e.g.*, a lack of evidence— during the Superior Court proceedings for abandoning the charges." *Id.* And in his Opposition, plaintiff admits that "further discovery will be needed to grasp the complete rationale for the Assistant US Attorney dismissing the charges." Opp. at 18. Such speculative allegations are insufficient to survive a motion to dismiss. *See Patrick v. District of Columbia*, 179 F. Supp. 3d 82, 89 (D.D.C. 2016). Beyond failing to allege a favorable termination, plaintiff also fails to allege that the criminal proceedings were

dismissed "with prejudice." *See Mehari v. District of Columbia*, 268 F. Supp. 3d 73, 85 (D.D.C. 2017).   These failures require dismissal of plaintiff's claim of malicious prosecution.

**Municipal Liability.**  Plaintiff claims that D.C. is liable under *Monell* for a "pattern or practice of conduct that violates the Constitution and federal laws." Compl. ¶ 41.  D.C. moves to dismiss, arguing that plaintiff has failed to "clear the hurdle of showing that he suffered a predicate violation of his constitutional rights" and that he "failed to plead facts showing that such a deprivation was caused by an official municipal policy."  MTD at 15–16.

"[M]unicipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To state a § 1983 claim against a municipality, a plaintiff "must allege not only a violation of his rights under the Constitution or federal law, but also that [its] custom or policy caused the violation." *Id.*  To allege a municipal policy or custom, a plaintiff "may point to (1) 'the explicit setting of a policy by the government that violates the Constitution,' (2) 'the action of a policy maker within the government,' (3) 'the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom,"' or (4) 'the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.'" *Blue v. District of Columbia*, 811 F.3d 14, 19 (D.C. Cir. 2015) (quoting *Baker v. District of Columbia*, 326

F.3d 1302, 1306 (D.C. Cir. 2003)). Because each "way[] to allege a municipal policy" has "its own elements," "a plaintiff must plead the elements of the relevant type of municipal policy." *Blue*, 811 F.3d at 20; *see also id.* (explaining that it "is not [the court's] role" to "try to surmise which theory of municipal liability has the strongest support" where a "plaintiff fails to identify the type of municipal policy at issue").

In *Blue*, our Circuit Court held that the plaintiff's claim failed because "she never indicated the contours of any type of municipal policy." *Id.* The same is true here! Plaintiff has offered no factual support of his threadbare allegation that D.C. maintains a "custom, policy, [or] practice" of "discriminat[ing] through its use of enforcement strategies" in violation of "the Constitution and federal laws," let alone identified which kind of municipal policy or custom he seeks to allege. *See* Compl. ¶¶ 40–41. Moreover, plaintiff makes no allegations to demonstrate the "affirmative link" required to show that "a municipal policy was the 'moving force' behind the constitutional violation" alleged. *Page v. Mancuso*, 999 F. Supp. 2d 269, 282 (D.D.C. 2013) (quoting *Baker*, 326 F.3d at 1306). Plaintiff's § 1983 claim for municipal liability must therefore be dismissed.

**D. Qualified Immunity**

Finally, defendants argue that they are entitled to judgment on plaintiff's claim of excessive force under § 1983 against the individual defendants because the officers acted reasonably and, regardless, they are entitled to qualified immunity. Plaintiff alleges that Officer O'Shea, Sergeant Sotelo, and unnamed MPD officers violated his Fourth Amendment rights by using "unreasonable" "excessive force" by "dragging [him] through mounds of broken glass, hit[ting] him repeatedly with a baton, destroy[ing] his phone and

pinn[ing] him to the pavement after being put in handcuffs." Compl. ¶ 34. He further claims that he "was intentionally taken to the ground by defendants." *Id.* ¶ 37. Defendants move to dismiss based on qualified immunity and for judgment "[b]ecause the force that the officers used to secure [p]laintiff was objectively reasonable." MTD at 12. In their view, "[t]he BWC footage shows that the force used by the officers to detain [p]laintiff was objectively reasonable" and "[t]he officers used only enough force to secure [p]laintiff in handcuffs." *Id.*

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted). To overcome a claim of qualified immunity, the Supreme Court has "stressed the need to identify a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment." *Id.* at 590 (internal quotation marks omitted). The inquiry therefore "must be 'particularized' to the facts of the case." *White v. Pauly*, 127 S. Ct. 548, 552 (2017). "A defendant must first raise the defense of qualified immunity when facing a § 1983 claim, but once asserted, the burden of proof falls to the plaintiff to show that the official is not

entitled to qualified immunity." *Campbell v. District of Columbia*, 245 F. Supp. 3d 78, 85

(D.D.C. 2017) (internal quotation marks omitted).   Under that burden, the plaintiff must

"show that the particular right in question—narrowly described to fit the factual pattern

confronting the officers—was clearly established." *Dukore v. District of Columbia*, 799

F.3d 1137, 1145 (D.C. Cir. 2015) (citation omitted).

Plaintiff here has failed to meet his burden.   In his Opposition, plaintiff argues that

defendants are not entitled to qualified immunity because "the force used to effect his

arrest … was not justified and … was not reasonable."   Opp. at 13.   In one sentence,

plaintiff offers a broad-sweeping distinction of a case cited by defendants with respect to

plaintiff's *battery* claim—not his excessive-force claim.   Opp. at 14.   Plaintiff otherwise

cites to no case law to demonstrate that the defendants violated a clearly established right

defined more specifically than the right to be free from "excessive and unreasonable" force.

Opp. at 14.   He has thus failed to show a clearly established right.   *See Leach v. District of*

*Columbia*, 2022 WL 1316436, at *8 (D.D.C. May 3, 2022); *Bushrod v. District of*

*Columbia*, 521 F. Supp. 3d 1, 27–28 (D.D.C. 2021); *Muhammad v. District of Columbia*,

881 F. Supp. 2d 115, 122 (D.D.C. 2012).   Moreover, "the kind of officer conduct that the

Supreme Court and [our] Circuit [Court] *has* found to violate the Fourth Amendment right

of seized individuals generally extends well beyond" the conduct "under the circumstances

presented here."   *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 394 (D.D.C. 2016).   Therefore,

even assuming a violation of constitutional rights occurred—a question that I need not

decide, *see Pearson*, 555 U.S. at 236—defendants are nonetheless entitled to qualified

immunity.   Plaintiff's Fourth Amendment claim must therefore be dismissed.

### E.  Leave to Amend

In his Opposition, plaintiff requests leave to amend his Complaint "should this Court deem any of [p]laintiff's claims or requests for relief deficient." Opp. at 21.  Under Federal Rule of Civil Procedure 15, a plaintiff is entitled to amend a complaint once as a matter of course within 21 days after serving the pleading or 21 days after service of a responsive pleading or motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  Plaintiff failed to amend his Complaint within the timeframes for amendment as a matter of course.

A plaintiff may also amend his pleading "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  To request the court's leave to amend, the plaintiff must file a motion requesting such relief and otherwise comply with the federal and local rules, including the requirement to file a copy of the proposed amended version with a motion for leave to file an amended pleading.  *See* Local Civil Rule 7(i).  "[A] bare request [for leave to amend] in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion [to amend] within the contemplation of Rule 15(a)."  *Confederate Mem'l Ass'n, Inc. v. Hines,* 995 F.2d 295, 299 (D.C. Cir. 1993) (citation omitted).  Because plaintiff has made nothing more than a "bare request" in his Opposition, he has failed to move properly for leave to amend.  His request for leave to amend is therefore DENIED.

## CONCLUSION

For all the foregoing reasons, defendants' Motion to Dismiss [Dkt. #11] is hereby GRANTED.   An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge